ROBERT W. CLARK v. JOSEPH G. BROWN

No. 8927SC514

(Filed 3 July 1990)

1. **Libel and Slander § 16 (NCI3d)— statement to newspaper reporter — plaintiff's competency as lawyer attacked — statement slander and libel per se**

Evidence was sufficient to show that defendant district attorney's statement was both slander and libel *per se* where

CLARK v. BROWN

[99 N.C. App. 255 (1990)]

it tended to show that defendant told a newspaper reporter, and thus spoke with the intent that the words be reduced to writing, that plaintiff assistant district attorney was incompetent because he conducted only two days of trial before stating that he had nothing else ready to go forward for trial; ordinary men would naturally understand defendant's statements as disgracing plaintiff in his profession as an attorney and hurtful to his reputation; and plaintiff introduced evidence showing that defendant's words were false, that plaintiff was competent as an attorney, and that termination of superior court after only two days of trial did not show incompetence as a matter of law.

**Am Jur 2d, Libel and Slander §§ 9-12, 122, 123, 148, 195-199.**

2. **Libel and Slander § 16 (NCI3d)— plaintiff's competency as lawyer attacked — qualified privilege claim rebutted — summary judgment for defendant improper**

The trial court erred in entering summary judgment for defendant district attorney in a libel and slander action by plaintiff, a former assistant district attorney, based on defendant's statement to a reporter that he dismissed plaintiff because plaintiff was incompetent where plaintiff raised genuine issues of fact on both the falsity of the charge of incompetence and the existence of actual malice, thus rebutting defendant's claim of qualified privilege, by offering evidence that he was a competent assistant district attorney, that defendant fired him within days after the newspaper published a letter from plaintiff's mother in support of defendant's political opponent, and that defendant's statement to the newspaper about plaintiff was of a vehement character.

**Am Jur 2d, Libel and Slander §§ 9-12, 122, 123, 148, 195-199.**

3. **Contracts § 34 (NCI3d)— intentional interference with contract — insufficiency of evidence**

The trial court properly entered summary judgment for defendant district attorney on plaintiff attorney's claim of intentional interference with contract where plaintiff contended that defendant intentionally interfered with his contractual relations with his clients when defendant required plaintiff to negotiate directly with defendant rather than allowing plaintiff to negotiate with assistant district attorneys, but there

CLARK v. BROWN

[99 N.C. App. 255 (1990)]

was no evidence that defendant induced plaintiff's clients to breach their contracts with plaintiff; defendant was clearly justified in setting the requirement that plaintiff negotiate with him because of his prosecutorial duties and scope of authority; and there was no evidence supporting plaintiff's contention that defendant's actions caused plaintiff actual damages, as plaintiff, within a week after establishing his private law practice, accepted employment and began work with another county's district attorney's office.

**Am Jur 2d, Interference §§ 6, 25, 28, 57-61.**

APPEAL by plaintiff from judgment filed 21 February 1989 by *Judge John R. Friday* in GASTON County Superior Court. Heard in the Court of Appeals 22 November 1989.

*Gillespie, Lesesne & Connette, by Edward G. Connette, for plaintiff-appellant.*

*Lacy H. Thornburg, Attorney General, by Norma S. Harrell, Assistant Attorney General, for the State.*

GREENE, Judge.

In this civil action, plaintiff appeals the trial court's grant of summary judgment for defendant on plaintiff's claims of libel, slander, intentional interference with contract and interference with prospective economic advantage.

The evidence, viewed in the light most favorable to plaintiff, tends to show that plaintiff was employed in December 1984 by defendant district attorney as an assistant district attorney for Gaston County. In the spring of 1986, defendant was engaged in a primary re-election campaign and plaintiff was a friend of defendant's opponent in that election. Plaintiff promised defendant that plaintiff would remain neutral in the primary election. During the week of 28 April 1986, plaintiff was prosecuting at a term of criminal superior court in Gaston County over which Judge Sitton presided, and court ended on 30 April 1986, Wednesday morning. Plaintiff told Judge Sitton that he had nothing "else that was ready to go forward for trial." On Saturday, 3 May 1986, a letter from plaintiff's mother was published in the *Gastonia Gazette* newspaper in support of defendant's primary opponent. Defendant became aware of the letter sometime before he arrived at the office on

the following Monday morning, 5 May 1986. On that morning, defendant called plaintiff into his office and told him to "clean out [his] desk." Plaintiff immediately called the *Gastonia Gazette* and other media offices, informing them that he had been fired by defendant for what he assumed "was for political reasons." Immediately after talking to plaintiff, a reporter for the *Gastonia Gazette* called defendant, who told defendant that plaintiff had told the newspaper that plaintiff "had been terminated for political reasons," and defendant told the newspaper that "among other things, that [defendant] had let [plaintiff] go because he was incompetent." On 5 May 1986, the *Gastonia Gazette* published a news article which stated in pertinent part:

> [Plaintiff], 32, an assistant district attorney since December 1984, said he was fired from his $36,100 a year job because he supports [defendant]'s opponent . . . in Tuesday's Democratic primary.
>
> . . .
>
> But [defendant] says it was job performance that caused him to fire [plaintiff].
>
> "Incompetence," [defendant] said. "Capital I-N-C-O-M-P-E-T-E-N-C-E. Last week I assigned him to superior court. He held court Monday and Tuesday, and he quit about Wednesday at 10 a.m. He said he had nothing further for the court to hear.["]
>
> "He hasn't held a full five days of superior court once since I hired him. He just can't seem to get things done. He tries one case and decides he's through."

Plaintiff instituted suit against defendant on the claims set out above. Defendant answered, denying the claims and asserting the affirmative defense of privilege. Defendant moved for summary judgment, offering defendant's deposition, plaintiff's discovery answers, and affidavits by defendant and two other persons.

Defendant's deposition testimony on cross-examination was:

Q. And then did you spell out the word "incompetent" for him?

A. I may have. I saw the story and the way the story was written, it was written as if I had. I don't recall that I did that, but it sounds like me.

Q. Do you have any reason to disagree with the quote?

A. No, it sounds exactly like something I would do.

Q. Why did you fire [plaintiff]?

A. Because of the remarks that he made in court to Judge Sitton and the fact that he did not have enough cases to continue beyond Wednesday morning.

. . .

Q. Did you ever say [plaintiff] was incompetent as an attorney?

A. No. I never made the statement that he was incompetent as an attorney.

Q. Would you ever have said that?

A. No.

After plaintiff left employment at the district attorney's office, he started his own private practice in the county. Defendant instituted a policy requiring that when plaintiff was defense counsel in any criminal case, plaintiff must negotiate directly with defendant. Defendant testified that he was concerned that plaintiff "having worked as an assistant district attorney in our office, might get overly sympathetic reactions from some of the assistants he had worked with and that in all fairness his cases should be handled just like any other lawyer's cases had been handled." By 9 June 1986, plaintiff had closed his Gastonia private law practice and joined the district attorney's office in Buncombe County. Plaintiff offered several affidavits at the summary judgment hearing to show that plaintiff enjoyed an excellent reputation as an assistant district attorney and that the fact that a superior court calendar ended on Wednesday was not incompetence by the prosecuting attorney.

The issues presented are whether summary judgment for defendant was appropriate, based on (I) defendant's affirmative defense of qualified immunity for libel and slander and (II) plaintiff's failure to show a material issue of fact on his claims of interference with contractual relations.

Summary judgment is appropriate when there is no genuine issue of material fact and any party is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c) (Cum. Supp. 1989). The evidence must be viewed in the light most favorable to the

non-movant, with the jury resolving questions of credibility. *Shuping v. Barber*, 89 N.C. App. 242, 244, 365 S.E.2d 712, 714 (1988) (citations omitted). As movant, defendant has the burden of showing at least one of the three grounds justifying summary judgment in his favor: (1) "an essential element of plaintiff's claim is nonexistent . . . [2] plaintiff cannot produce evidence to support an essential element of his claim, or . . . [3] plaintiff cannot surmount an affirmative defense which would bar the claim." *Id.* (citations omitted).

I

A

Libel and slander

[1]  Plaintiff first asserts that defendant's statement was libel *per se* or slander *per se*. We agree.

In construing the publication, we are guided by the rule that to ·be actionable *per se*, the words:

> 'must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule
>
> . . .
>
> The question always is how would ordinary men naturally understand the publication
>
> . . .
>
> [T]he [publication] . . . must be . . . stripped of all insinuations, innuendo, colloquium, and explanatory circumstances. The article must be defamatory on its face "within the four corners thereof." '

*Tyson v. L'Eggs Products, Inc.*, 84 N.C. App. 1, 12, 351 S.E.2d 834, 840-41 (1987) (citation omitted).

"[F]alse words imputing to a merchant or businessman conduct derogatory to his character and standing as a businessman tending to prejudice him in his business are actionable, and words so uttered may be actionable *per se*." *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955) (slander *per se*: *Shreve v. Duke Power Co.*, 97 N.C. App. 648, 650, 389 S.E.2d 444, 446 (1990); libel

## CLARK v. BROWN

[99 N.C. App. 255 (1990)]

*per se: Ellis v. Northern Star Co.*, 326 N.C. 219, 223, 388 S.E.2d 127, 130 (1990) ). The false words

> (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business. That is to say, it is not enough that the words used tend to injure a person in his business. To be actionable *per se*, they must be uttered of him in his business relation.

*Id.*

> Whe[n] such words are spoken, the law raises a *prima facie* presumption of malice and a conclusive presumption of legal injury and damage, entitling the victim of the defamation to recover damages, nominal at least, without specific proof of injury or damage.

*Badame*, at 756, 89 S.E.2d at 467 (citation omitted).

As here, when defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel. *Bell v. Simmons*, 247 N.C. 488, 494, 101 S.E.2d 383, 387 (1958) (defamatory statements made to a newspaper reporter with the intent that the newspaper publish them, which are published, are both slander and libel).

First, we determine as a matter of law that ordinary men would naturally understand defendant's statements to the newspaper reporter as disgracing plaintiff in his profession as an attorney and hurtful to his reputation. "Incompetent" means "[o]f inadequate ability or fitness; not having the requisite capacity or qualification; incapable." Oxford English Dictionary 166 (1st ed. 1971). On its face, the statement has but one meaning, defamatory *per se*, which degrades plaintiff's legal ability and disgraces him in his capacity as an attorney. Such imputations tend to prejudice plaintiff in his livelihood.

Second, reviewing the evidence in the light most favorable to plaintiff, we determine that plaintiff introduced evidence showing that defendant's words were false, that plaintiff was competent as an attorney, and that termination of superior court after only two days of trial did not show incompetence as a matter of law.

## B

## Qualified privilege

[2]   Plaintiff next argues that he introduced evidence showing material issues of fact concerning defendant's affirmative defense of qualified privilege. We agree.

Qualified privilege is a defense for a defamatory publication, which:

> grew out of the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communicate their knowledge and information about a person in whom they have an interest to another who also has an interest in such person.

*Stukuls v. State*, 397 N.Y.S.2d 740, 744, 366 N.E.2d 829, 833 (1977).

A defamatory statement is qualifiedly privileged when made (1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. *Towne v. Cope*, 32 N.C. App. 660, 663, 233 S.E.2d 624, 626-27 (1977) (citation omitted). "This duty may be public, personal, or private and of a legal, judicial, political, moral, or social nature." *Shuping*, at 245, 365 S.E.2d at 714 (citation omitted). "Publication of the official acts of public men and bodies is in the public interest." *Yancey v. Gillespie*, 242 N.C. 227, 230, 87 S.E.2d 210, 212 (1955).

"Whe[n] the affirmative defense of privilege is alleged, the burden is on the defendant to establish facts sufficient to show that the publication of the alleged defamation was made on a privileged occasion." *Shuping*, at 245, 365 S.E.2d at 714 (citations omitted). " 'Whether the occasion is privileged is a question of law for the court, subject to review, and not for the jury, unless the circumstances of the publication are in dispute, when it is a mixed question of law and fact.' " *Id.* (citation omitted).

If the court determines as a matter of law that the occasion is privileged, defendant has "a presumption that the statement was made in good faith and without malice." *Shreve*, at 651, 389 S.E.2d at 446. Since defendant's presumption rebuts plaintiff's presumption of actual malice, plaintiff then has the burden of prov-

CLARK v. BROWN

[99 N.C. App. 255 (1990)]

ing "both the falsity of the charge and that it was made with actual malice." *Boston v. Webb*, 73 N.C. App. 457, 460, 326 S.E.2d 104, 106, *review denied*, 314 N.C. 114, 332 S.E.2d 479 (1985) (citation omitted).

> Actual malice may be proven by evidence of ill-will or personal hostility on the part of the declarant . . . or by a showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity.

*Kwan-Sa You v. Roe*, 97 N.C. App. 1, 12, 387 S.E.2d 188, 193 (1990) (citations omitted). If plaintiff cannot meet his burden of showing actual malice, the qualified privilege operates as an absolute privilege and bars any recovery for the communication, even if the communication is false. *See Stukuls*, at 742, 366 N.E.2d at 831.

The trial court determined, and we agree, that defendant's statements were entitled to qualified privilege. Defendant was a district attorney running for re-election who had a political interest in responding to accusations that he had acted improperly in firing plaintiff for political reasons. Defendant also had an interest in defending his employment decisions. Defendant's firing of a governmental employee was clearly the 'official act of a public man.' The persons to whom defendant ultimately communicated the statements were the citizens and voters of the county, who had a public interest in their elected district attorney's official acts. Defendant made the statements in an appropriate manner, an interview, to a local newspaper reporter for news publication in response to plaintiff's statements made for news publication, circumstances fairly warranted by plaintiff's presentation of information. Therefore, defendant's statements are presumed to be made in good faith and without malice, cancelling plaintiff's presumption of actual malice arising on statements defamatory *per se*.

When defendant's presumption of good faith rebuts plaintiff's presumption of actual malice, plaintiff assumes the burden of showing actual malice, and our review of the evidence in the light most favorable to plaintiff shows genuine issues of material fact on both the falsity of the charge and the existence of actual malice, precluding entry of summary judgment for defendant. We determine that there is ample evidence in the record that defendant's statement was false and made with actual malice. Defendant fired plaintiff within days after the newspaper published a letter from plaintiff's mother

CLARK v. BROWN

[99 N.C. App. 255 (1990)]

in support of defendant's political opponent, and the vehement character of the statement to the newspaper are some evidence of defendant's ill-will toward plaintiff. Plaintiff also introduced evidence that he was a competent assistant district attorney.

II

[3] Plaintiff contends that defendant intentionally interfered with his contractual relations with his clients when defendant required plaintiff to negotiate directly with defendant, rather than allowing plaintiff to negotiate with assistant district attorneys. We disagree.

The tort of interference with contract has five elements:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person;

(2) the defendant knows of the contract;

(3) the defendant intentionally induces the third person not to perform the contract;

(4) and in doing so acts without justification;

(5) resulting in actual damage to plaintiff.

*United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citation omitted).

Assuming, *arguendo*, that a valid contract existed between plaintiff and his clients, of which defendant had knowledge, no record evidence supports plaintiff's contention that defendant intentionally induced plaintiff's clients to breach their contracts with plaintiff. Plaintiff's deposition testimony was that plaintiff did not think that defendant contacted any of plaintiff's clients and defendant testified that he never contacted or attempted to contact any of plaintiff's clients. Assuming for the sake of argument that defendant's requirement that plaintiff negotiate directly with defendant rather than with assistant district attorneys virtually destroyed plaintiff's ability to enter into attorney-client contracts with criminal defendants, defendant was clearly justified in setting such a requirement because of his prosecutorial duties and scope of authority. Finally, there is no record evidence supporting plaintiff's contention that defendant's actions caused plaintiff actual damages. Within a week after plaintiff established his private law practice,

he accepted employment and began work with the Buncombe County District Attorney's Office.

We find no merit in plaintiff's remaining assignments of error. We vacate entry of summary judgment on plaintiff's defamation action and remand it for trial. We affirm entry of summary judgment on the remaining claims.

Affirmed in part, vacated in part and remanded.

Judges JOHNSON and PARKER concur.