**Terry Lynn SPENCER, Plaintiff,**

v.

**Hubert Wayne BYRD, Sr., Sheriff of Hoke County, Michael B. Wood, Individually and as Chief Deputy Sheriff of Hoke County, and Hoke County State of North Carolina, Defendants.**

No. 3:93CV647.

United States District Court, M.D. North Carolina, Rockingham Division.

Nov. 1, 1995.

Brian K. Manning, Steven J. O'Connor, Fayetteville, NC, for plaintiff.

James R. Morgan, Jr., Allan R. Gitter, Winston–Salem, NC, Garris N. Yarborough, Fayetteville, NC, for defendants.

## MEMORANDUM OF DECISION

TILLEY, District Judge.

On November 10, 1993, Plaintiff, Terry Spencer, filed a complaint alleging four claims related to her discipline and discharge as a Hoke County Sheriff's Deputy. She alleged that she had been disciplined and eventually discharged as the result of gender discrimination, that she had been discharged in retaliation for having filed a complaint about gender discrimination with the EEOC, and that she had been libeled when Chief Deputy Mike Wood filed a false report with the North Carolina Sheriff's Education and Training Standards Commission ("NCSETS Commission") accusing her of knowingly falsifying information to her superiors. She also alleged that the County, by discharging her, had breached an employment contract.

Defendants moved for summary judgment on all counts. Summary Judgment was granted on the contract claim and denied on the other three. Additionally, Hoke County and Chief Deputy Wood, in his official capacity, were dismissed as parties to the libel claim. The parties agreed to have the surviving claims resolved by a bench trial which was held on October 2 and 3, 1995.

After weighing the evidence and considering the credibility of the witnesses, this Memorandum of Decision is entered pursuant to Fed.R.Civ.P. 52. For the reasons which follow, the Court finds that the Plaintiff has not proven gender discrimination nor libel. The Court further finds that Ms. Spencer has proven by a preponderance of the evidence that her discharge was substantially motivated by her filing of the complaint with the EEOC.

### I.

The Court finds the following facts to have been proved by a preponderance of the evidence: Plaintiff was hired as a probationary, full-time deputy for the Hoke County Sheriff's Department on July 24, 1992. At that time, she was assigned to the Second Platoon. Ms. Spencer, while on Second Platoon, made a number of complaints to Sheriff Byrd and Chief Deputy Wood about other platoon members—some coming in calls to Byrd's

and Wood's homes late at night—alleging that platoon members were not giving her proper backup and were not even on the job. Late night checks by Defendants Byrd and Wood resulting from those complaints did not substantiate Ms. Spencer's allegations and often showed them to be wrong. When platoon members tried to determine who was making allegations about them doing things such as playing pool when they were supposed to be on patrol, Ms. Spencer blamed Judy Cain, the other female deputy in the Department. Ms. Spencer frequently asked Ms. Cain who was on a different platoon to ride with her at night because she was anxious about being alone after another deputy was shot in the line of duty.

On January 10, 1993, Ms. Spencer was transferred to the third platoon where she served about a month without incident. On the evening of February 8, 1993, she was involved in a one-vehicle accident while driving her patrol car on Myra Road. Initially, Defendants took no disciplinary action against Ms. Spencer, but an examination of the scene led Chief Deputy Wood to question Ms. Spencer's account of how the accident happened and the speed she was going when her car spun around. The Defendants were reasonable in determining that her account was misleading and that she had disregarded a speed directive issued that very evening by the Sheriff himself. Sheriff Byrd accepted Chief Deputy Wood's recommendation to suspend Spencer and she was placed on suspension for 10 days beginning on February 18, 1995.

Upon returning from suspension, Ms. Spencer noticed that her patrol car radio was not operating properly. She reported her radio problem to Defendants and was instructed to take the car to Daniel's Exxon. At Daniel's Exxon, Plaintiff spoke to three men, John Melvin, James Breeden and Franklin Pruitt. Melvin identified himself as an employee of Daniel's Exxon, while the other two men indicated that they worked there part-time. Before leaving Daniel's Exxon, Plaintiff received a handwritten note which stated:

> Radio was unpluged [sic]
> wiring harness was taped up
> disconnection in power
> trunk lock & AM & FM
> antenna was unplugged
> [s/] James Breeden
> It appeared to be vandalized

The words: "It appeared to be vandalized" were written in a different handwriting from the words appearing above the name James Breeden.

Believing that someone in the Sheriff's Department had done something to her vehicle to harass her, Ms. Spencer took the note and showed it to Chief Deputy Wood. At some later date, before she was discharged, Plaintiff turned the document over to Wood at his request.

In fact, Ms. Spencer's patrol car had been in use by others during her suspension and, because of difficulties with the radio, the vehicle had been taken to Daniel's Exxon where the AM radio had been disconnected and the wires taped as described in the document obtained by Ms. Spencer. Knowing that Daniel's Exxon had previously worked on the car, Defendants Byrd and Wood went there to find out about the "vandalism" referred to in the note. Sheriff Byrd talked to the owner of Daniel's who reported that his people were the ones who originally had disabled the AM radio and taped the wiring harness and that no one from his station had written anything about vandalism on the note. Defendants Byrd and Wood suspected at that point Ms. Spencer had added the wording herself.

On March 9, 1993, Ms. Spencer filed an EEOC Charge alleging discriminatory discipline regarding her suspension.

On March 19, 1993, the Charlotte EEOC Office mailed notice of the discriminatory discipline charge to the Hoke County Sheriff's Department. Through the normal course of the mails, Defendants should have received this notice on or about March 22, 1993, the same day Ms. Spencer received her copy.

The normal practice of the Hoke County Sheriff's Department during this period was for Sheriff Byrd to open all the mail after it

was retrieved by office personnel. Sheriff Byrd would then either date-stamp official business correspondence or give it to office personnel to be date-stamped. Defendants received the notice of the EEOC Charge alleging discriminatory discipline, but it was never date-stamped in accordance with normal practice as other items received by the Sheriff's Department during the same time period.

On March 23, 1993, Defendant Wood instructed Detective Bobby Conerly of the Hoke County Sheriff's Department to investigate the Daniel's Exxon incident. Later that day, Detective Conerly submitted a report to Defendants Byrd and Wood which indicated that he had interviewed two of the men involved in the Daniel's Exxon incident, Melvin and Breeden, and that they denied writing the statement, "It appeared to be vandalized," on the bottom of the document Plaintiff submitted to Defendants. Defendants Byrd and Wood could not recall whether they relied upon Detective Conerly's report in deciding to terminate Plaintiff's employment.

It was not until this litigation was in the discovery phase that Defendants learned Mr. Pruitt and not Ms. Spencer had written the words about the car appearing to have been vandalized.

Defendant Byrd had notice of the EEOC Charge of discriminatory discipline at the time Defendants decided to discharge Plaintiff and told Ms. Spencer by telephone on Monday, March 22nd that he wanted to talk to her about the complaint she had filed.[1]

At or about 4 P.M., on March 23, 1993, Sheriff Byrd discharged Ms. Spencer. Before that, however, Chief Deputy Wood attempted to persuade her to resign by telling her that if she resigned, they would give her a good recommendation so that she could obtain other law enforcement work. When she failed to voluntarily resign, Mr. Wood filled out a "Report of Separation" form to be sent to the North Carolina Sheriff's Education and Training Standards Commission which contained the following language as a reason for termination:

> Individual failed to meet and comply with policies and procedures of the Sheriff's Department while under a Conditional Offer of Probationary Employment (24 July 1992 thru 23 July 1993), cummulating [sic] in the individual presenting false statements and continuously declaring that unknown persons within the Department were "out to get her", with the individuals [sic] actions causing damage to good order and discipline.

Defendants knew they were not required to fill in the "Reason" portion of the Report of Separation.

The factors motivating Ms. Spencer's discharge were that (1) she had contributed to dissension while on the second platoon by complaining to Defendants Byrd and Wood about others and then attributing the complaints to another person, (2) she had made statements reasonably believed to be untrue about the Myra Road incident, (3) she had made statements about her patrol car having been vandalized and had provided a note which, upon information obtained by March 23rd, Defendants Byrd and Wood could reasonably have believed to untrue, and (4) she had filed a gender discrimination complaint with the EEOC.

■ From the evidence presented the Court is unable to determine whether or not

---

1. Sheriff Byrd testified that he was unaware of the EEOC complaint when he and Chief Deputy Wood discussed discharging Ms. Spencer and that their decision had been formed sometime during the week of February 14–20, 1993. The Court found that testimony not credible. On June 14, 1994, in his answer to Plaintiff's First Set of Interrogatories, Defendant Byrd had stated that he made the decision to discharge Plaintiff on March 23, 1993. It is also reasonable to believe that since the document had been dated on the 19th it would have arrived on March 22nd, the date Ms. Spencer testified the Sheriff

mentioned the complaint to her. It is also noteworthy that the Sheriff's copy of the EEOC complaint was never date-stamped. Those facts along with the Sheriff's demeanor while testifying about this matter leads the Court to adopt Ms. Spencer's version of the March 22nd phone call and to find pretext in the Defendants' statements that the decision to discharge Ms. Spencer had been made the previous week, that they had no knowledge of the EEOC complaint, and that the filing of the complaint was not a motivating factor in deciding on March 23, 1993 to terminate Ms. Spencer.

Defendants would have discharged Plaintiff absent the retaliatory motive, and thus, Defendants have not proven it more likely than not that they would have done so.[2]

## II.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, prohibits employers from discriminating against employees based on gender both as to discipline and discharge and from retaliating against employees who file charges of discrimination with the EEOC. A plaintiff can prove a Title VII claim by presenting direct evidence of discrimination, if direct evidence is not available, by using the *McDonnell Douglas* proof scheme. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

### GENDER DISCRIMINATION

■ Under the *McDonnell Douglas* approach, a plaintiff may prove a prima facie case of gender discrimination by producing evidence, sufficient to persuade a reasonable fact finder that it is more likely true than not that she (1) was in a protected group, (2) was performing her job at a level meeting her employer's legitimate expectations and that she (3) was either (a) discharged and her job left open or given to someone not in the protected group or (b) disciplined more severely for conduct similar to that for which a non-protected employee received more lenient treatment. Such proof, standing alone, creates an inference of discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508–11, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993); *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993). If, in reply, the employer produces evidence of a legitimate, non-discriminatory reason for the discipline or discharge, the inference of discrimination disappears. *Id.* The plaintiff may then create a question for the finder of fact by offering evidence from which a reasonable fact finder could determine that the employer's reason is more likely than not pretextual and

therefore, that gender discrimination was a substantial factor motivating the discharge or discipline. *Id.*

■ Ms. Spencer bases her claim of discriminatory discipline upon proof that she was suspended following the Myra Road accident and that several male deputies who had vehicular accidents were not suspended. In response, the Defendants produced credible evidence that Ms. Spencer was disciplined after her accident on Myra Road not for the accident itself, but for disregarding the Sheriff's driving directive issued earlier that very night and for giving an account of the accident which was reasonably viewed as a misrepresentation. The Defendants also offered testimony which supports a finding that none of the other deputies' accidents involved either a failure to obey a directive or a false explanation.

Ms. Spencer offered no credible evidence that the Defendants' explanation of her suspension was pretext and has not, therefore, carried her ultimate burden of persuasion that there were others engaging in conduct similar to her own or that gender was the basis for her discipline.

■ With regard to the claim of discharge based upon gender discrimination, Defendants have presented credible evidence that Ms. Spencer fomented dissent among other deputies, gave misleading statements about the Myra Road accident, and about other deputies not being on duty when they actually were. The Defendants also reasonably believed, based upon the information received from the owner of Daniel's Exxon and the interviews of Detective Connerly, that Ms. Spencer had written the vandalism portion of the note discussed earlier. Ms. Spencer has not credibly shown pretext with regard to any of those reasons which the Court has found to have been factors motivating her discharge. The only pretext shown is with regard to whether Defendants retaliated for Ms. Spencer's filing the EEOC

---

**2.** While each of the first three motives would, standing alone, have been sufficient reason to terminate Ms. Spencer, the first two involved conduct which had occurred earlier and for which Ms. Spencer had been disciplined by sus-

pension. The timing of the discharge and the pretext discussed in Footnote 1, persuade the Court that, more likely than not, retaliation was one of the factors substantially motivating the decision to discharge Ms. Spencer.

complaint. There is no credible evidence of gender being a factor whatsoever in her discharge.

### RETALIATORY DISCHARGE

■ An employee can prove retaliatory discharge either by direct proof of retaliation for a complaint having been filed with the EEOC or by offering a prima facie case consisting of proof sufficient to allow a reasonable fact finder to determine that (1) she filed a complaint with the EEOC, (2) that the employer terminated her employment, ·and that (3) there was a causal connection between her having made the complaint and then being discharged. *See Williams v. Cerberonics,* 871 F.2d 452, 457 (4th Cir.1989).

■ As discussed earlier in Footnotes 1 and 2, Ms. Spencer has proven it more likely true than not, from a combination of direct evidence (the Sheriff's statement on March 22nd that he wanted to talk to her about the complaint) and pretext that retaliation was a substantially motivating factor in her discharge. Because the Court is unable to determine if Defendants would have discharged Plaintiff absent the retaliatory motive, Defendants are liable for retaliation despite the existence of other motives. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 246, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989).

### LIBEL

■ Plaintiff alleges that Defendant Wood's statement in the "Reason" section of the Report of Separation that she was discharged for "presenting false statements" is libel *per se.* Under North Carolina law, to be actionable *per se,* allegedly libelous words " 'must [to a reasonable person] be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule'...." *Clark v. Brown,* 99 N.C.App. 255, 260, 393 S.E.2d 134, 137 (quoting *Tyson v. L'eggs Products, Inc.,* 84 N.C.App. 1, 12, 351 S.E.2d 834, 840–41 (1987)), *disc. rev. denied,* 327 N.C. 426, 395 S.E.2d 675 (1990). False words which " 'touch the plaintiff in his special trade or occupation, and ... contain an imputation necessarily hurtful in its effect on his business ... that is to say they [are] uttered of him in his business relation' " are actionable *per se* if published to a third-person. *Id.* at 260–61, 393 S.E.2d 134 (quoting *Badame v. Lampke,* 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955)).

■ In her explanation of the Myra Road incident and in her accounts of other deputies not being on duty, Ms. Spencer did "present false statements" to Defendants during her employment and thus while the Report of Separation may affect Plaintiff in her profession, it is not libelous because it does not contain "false words." To the extent the Report of Separation is based on the Daniel's Exxon incident, it is inaccurate and potentially libelous given that it is now undisputed that Plaintiff did not "present false statements" in that matter. That claim, however, fails for two reasons. First, specific misrepresentations were not identified in the report and the wording of the report, strictly interpreted, is truthful. Second, Defendant Wood is protected by governmental immunity and qualified privilege from any liability for those statements.

■ To be held individually liable for an act, a government official must be found to have acted corruptly, maliciously or outside the scope of his duties. *See Smith v. Hefner,* 235 N.C. 1, 68 S.E.2d 783 (1952); *Mazzucco v. North Carolina Board of Medical Examiners,* 31 N.C.App. 47, 228 S.E.2d 529, *disc. rev. denied,* 291 N.C. 323, 230 S.E.2d 676 (1976). Plaintiff has not proven it more likely than not that Defendant Wood prepared the Report of Separation maliciously, corruptly or outside the scope of his duties. To the contrary, Defendant Wood was acting within the scope of his employment in performing his duty to report to the NCSETS Commission. A reasonable person on the 23rd could have believed from information received from the Daniel's Exxon staff that Ms. Spencer had written the "vandalism" portion herself. Defendant Wood is therefore entitled to governmental immunity.

■ "The essential elements for the qualified privilege to exist are good faith, an

interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner and to proper parties only." *Harris v. Procter & Gamble,* 102 N.C.App. 329, 331, 401 S.E.2d 849, 850 (1991). Defendant Wood has shown that these elements are satisfied in this case and that he is protected by the qualified privilege. "The existence of a privilege creates a presumption that the statement was made in good faith and without malice," *Shreve v. Duke Power Co.,* 97 N.C.App. 648, 650, 389 S.E.2d 444, 446, *disc. rev. denied,* 326 N.C. 598, 393 S.E.2d 883 (1990), and thereby rebuts the "presumption of actual malice arising on statements defamatory *per se.*" *Clark,* 99 N.C.App. at 263, 393 S.E.2d at 138.

## CONCLUSION

Defendants have prevailed on Plaintiff's Title VII claims for discharge and discipline based on gender. Plaintiff has proven her Title VII retaliation cause of action against Defendants. Defendant Wood is not personally liable on Plaintiff's libel action. Final judgment will be ordered after the parties have been heard on the issue of the proper amount of damages.