IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-530

No. COA21-661

Filed 2 August 2022

Wake County, No. 20-CVS-9039

WESLEY WALKER, Plaintiff,

v.

WAKE COUNTY SHERIFF'S DEPARTMENT; GERALD M. BAKER, in his official capacity as Wake County Sheriff; ERIC CURRY (individually); WESTERN SURETY COMPANY; WTVD, INC., WTVD TELEVISION, LLC; SHANE DEITERT, Defendants.

Appeal by Plaintiff from orders entered 25 November 2020 and 7 May 2021 by Judge Vince M. Rozier, Jr., in Wake County Superior Court. Heard in the Court of Appeals 10 May 2022.

> *John M. Kirby for Plaintiff-Appellant.*
>
> *Essex Richards, P.A., by Jonathan E. Buchan and Natalie D. Potter, for Defendants-Appellees WTVD, Inc., WTVD Television, LLC, and Shane Deitert.*
>
> *Poyner Spruill LLP, by J. Nicholas Ellis, for Defendants-Appellees Gerald M. Baker, Eric Curry, and Western Surety Company.*

COLLINS, Judge.

¶ 1        Plaintiff appeals from the trial court's orders discontinuing his defamation action against Wake County Sheriff Gerald M. Baker, Wake County Sheriff's Office Public Information Officer Eric Curry, and Western Surety Company ("Sheriff

Defendants")[1] and WTVD, Inc., WTVD Television, LLC, and Shane Deitert ("WTVD Defendants"). Plaintiff argues that Sheriff Defendants were not entitled to the defense of qualified privilege and WTVD Defendants were not entitled to the defense of fair report privilege. We reverse the trial court's order granting judgment on the pleadings in favor of Sheriff Defendants and affirm the trial court's order dismissing Plaintiff's claims against WTVD Defendants.

## I.    Background

On 26 March 2019, a magistrate issued a warrant for Plaintiff's arrest upon finding probable cause that Plaintiff "unlawfully and willfully did assault and strike Darry L. Chavis by striking the victim in the face with a close [sic] fist." (Original capitalization omitted). Plaintiff was arrested pursuant to this warrant on 14 August 2019. At the time, Plaintiff was employed as a certified nursing assistant with Capital Nursing in Raleigh.

At 7:08 a.m. the next morning, Ed Crump, an employee of defendants WTVD, Inc., and WTVD Television, LLC, emailed Curry. Crump wrote in the subject line, "Assault case…" and wrote in the body, "Just asking for a quick check to make sure this charge isn't related to this guy's job. He lists his employer as Capital Nursing. I'm guessing it's domestic but if it's related to a client from Capital Nursing I'm

---

[1] Plaintiff voluntarily dismissed the action against the Wake County Sheriff's Office prior to entry of the orders on appeal.

interested in more details." Crump also included a copy of the online record for Plaintiff's arrest. Curry responded at 11:38 a.m., "Related to his employer."

¶ 4 During the 6:00 p.m. news that evening, WTVD broadcast the following report:

> New at 6:00 a Wake County man who works with the elderly is facing an assault charge. Wesley Walker works for Capital Nursing. According to the warrant Walker hit the victim in the face with a closed fist.
>
> The Sheriff's Office telling us the charge is related to his job. We've reached out to Capital Nursing but so far they have refused to comment.

¶ 5 Plaintiff brought this defamation suit on 13 August 2020, alleging in pertinent part:

> 10. On or about August 15, 2019, the Defendant Eric Curry, as an employee of the Defendant Wake County Sheriff's Department, published information regarding the Plaintiff to the WTVD Defendants, consisting of an allegation that the Plaintiff was charged criminally with assaulting a resident of Capital Nursing and/or of assaulting a person in connection with the Plaintiff's employment with Capital Nursing, and reported that the alleged victim was a Mr. Darry Chavis.
>
> 11. Upon information and belief, Defendant Shane Deitert, employed by the WTVD Defendants attempted to investigate this false allegation.
>
> 12. Upon information and belief, Defendant Deitert called Capital Nursing and spoke with a staff member of Capital Nursing regarding this allegation.
>
> 13. Upon information and belief, said staff at Capital Nursing informed Defendant Deitert that there was no resident by the name of Darry Chavis at Capital Nursing

and that this incident did not occur at Capital Nursing.

14. Upon information and belief, Defendant Deitert then sent a message to Capital Nursing through the Capital Nursing website, but Capital Nursing does not constantly monitor messages sent through its website and this email was not detected by Capital Nursing until the evening of August 15, 2019.

15. Shane Deitert specifically notified the Plaintiff's employer that the Plaintiff has "been charged with striking a patient, Darry L Chavis."

16. Neither Shane Deitert nor any other persons employed by Defendant WTVD attempted to contact the Plaintiff to confirm the allegations.

17. Upon information and belief, Shane Deitert, acting in concert with others employed at WTVD, made a decision to publish this unfounded allegation and instructed and directed others to publish these unfounded allegations.

18. On August 15, 2019, during the 6:00 pm newscast, the WTVD Defendants, by and through their employees including but not limited to Shane Deitert, published a story on the widely broadcast local news program, alleging that the Plaintiff, "who works with the elderly," was charged with assault, consisting of hitting a victim in the face with a closed fist, and that the charge was related to the Plaintiff's job and that the Plaintiff assaulted a resident with a closed fist.

. . . .

28. As a direct result of this false broadcast, the Plaintiff lost his job with Capital Nursing.

. . . .

31. The reality is that Darry Chavis is the Plaintiff's

step-father, and Mr. Chavis filed false, fraudulent and malicious charges against the Plaintiff.

32. Although the charges by Darry Chavis were wholly false, and have been dismissed, they had absolutely nothing to do with the Plaintiff's employment with Capital Nursing, nothing to do with the Plaintiff's profession, and nothing to do with any residents of Capital Nursing.

33. The story as published by the Defendants contains not only false and defamatory statements, but contains nefarious and defamatory innuendo and suggestion (including but not limited to that the Plaintiff works with the elderly, clearly suggesting that the Plaintiff assaulted an elderly patient and/or that the Plaintiff was a threat to elderly patients).

34. The false information published by the Defendants directly affected the Plaintiff and pertained to the Plaintiff in his profession, in that they alleged that this incident occurred in connection with the Plaintiff's employment, and it is highly defamatory to allege that a CNA, entrusted with the care of elderly, disabled, and/or feeble patient[s], would commit an assault in connection with his employment as a CNA.

35. The aforementioned statements of the Defendants were defamatory and impugned the Plaintiff's character and impugned the Plaintiff's trade and profession in ways including but not limited to the safety of patients under the Plaintiff's care.

36. The Plaintiff's reputation has been damaged as a result of the Defendants' defamatory and unfair conduct described herein.

37. The Defendants Capitol Broadcasting [sic] and Deitert were negligent in their handling, reporting, investigation and publication of the aforementioned story in that they failed to adequately investigate said report;

ignored information from Capital Nursing which directly refuted the allegations, failed to adequately investigate the allegations with the Plaintiff and with Capital Nursing; failed to contact the Plaintiff to obtain his version of events; failed to postpone airing of the story until the story could be properly verified, especially in view of the gravity of the allegations and the lack of any emergent conditions warranting release of the story prior to adequate confirmation and that the Plaintiff is not a public figure; failed to investigate and/or contact the alleged victim (Darry Chavis), which would have revealed that the Plaintiff and the alleged victim were related and that these allegations did not pertain to the Plaintiff's employment; transmitted an inquiry to Capital Nursing through its website knowing that said means of contacting a nursing facility would not yield a prompt response; failed to adhere to journalistic standards; chose to run this story for its sensational appeal in order to increase ratings, while ignoring the negative impact of this story on the Plaintiff; and in other particulars to be adduced in discovery and through trial.

38. The statements of the Defendants, that the Plaintiff had committed an infamous crime, tends to impeach, prejudice, discredit and reflect unfavorably upon the Plaintiff in his trade or profession, and tends to subject the Plaintiff to ridicule, contempt or disgrace.

39. The Defendants wrote and caused to be printed false and defamatory statements pertaining to the Plaintiff.

40. The Defendants published these statements.

41. These statements were false.

42. The Defendants intended the statements to charge the Plaintiff with having committed an infamous crime, to impeach the Plaintiff in his trade and profession, and to subject the Plaintiff to ridicule, contempt and

disgrace.

43. The persons other than the Plaintiff to whom the statements were published reasonably understood the statement to charge the Plaintiff with having committed an infamous crime, to impeach the Plaintiff in his trade and profession, and to subject the Plaintiff to ridicule, contempt and disgrace.

44. At the time of the publication, the Defendants knew the statements were false and/or failed to exercise ordinary care in order to determine whether the statements were false.

¶ 6 Sheriff Defendants answered and moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted under N.C. Gen. Stat. § 1A-1, Rules 12(b)(1), (2), and (6). Sheriff Defendants alleged that Curry's email to Crump was absolutely and qualifiedly privileged and that governmental immunity, public official immunity, and Plaintiff's own negligent, intentional, and willful or wanton conduct barred Plaintiff's claims. Sheriff Defendants subsequently moved for judgment on the pleadings pursuant to N.C. Gen. Stat. § 1A 1, Rule 12(c).

¶ 7 WTVD Defendants moved to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). WTVD Defendants contended that the alleged defamatory statement was protected by the fair report privilege because it "was a substantially accurate summary of a written statement by a government official[.]"

¶ 8         The trial court entered separate orders granting WTVD Defendants' motion to dismiss for failure to state a claim on 25 November 2020 ("WTVD Order") and Sheriff Defendants' motion for judgment on the pleadings on 7 May 2021 ("Sheriff's Order"). In the Sheriff's Order, the trial court concluded that the claims against Sheriff Defendants should be dismissed because "the statements of Curry alleged in the Complaint are protected by qualified privilege[.]"

¶ 9         Plaintiff appealed both orders to this Court.

## II.  Discussion

### A. Sheriff's Order

¶ 10         Plaintiff first argues that the trial court erred by granting Sheriff Defendants' motion for judgment on the pleadings because they are not entitled to the defense of qualified privilege.

¶ 11         "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  N.C. Gen. Stat. § 1A-1, Rule 12(c) (2021).  "Judgment on the pleadings is a summary procedure and the judgment is final."  *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (citation omitted).  "Therefore, each motion under Rule 12(c) must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits."  *Id.*  A party seeking judgment on the pleadings must show that "no material issue of fact[] exists and that [the party] is clearly entitled to judgment" as a matter

of law. *Id.* (citation omitted) In considering a motion for judgment on the pleadings, the

> court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Id.* (citations omitted). "Judgments on the pleadings are disfavored in law." *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 3, 745 S.E.2d 316, 319 (2013) (quotation marks and citations omitted). This Court reviews a trial court's order granting a motion for judgment on the pleadings de novo. *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005).

Generally, "to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002) (citation omitted).

### 1. *Qualified Privilege*

"Qualified privilege is a defense for a defamatory publication[.]" *Clark v. Brown*, 99 N.C. App. 255, 262, 393 S.E.2d 134, 138 (1990).

> A defamatory statement is qualifiedly privileged when made (1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Id.* (citation omitted). Furthermore, "the defense of privilege is based upon the premise that some information, although defamatory, is of sufficient public or social interest to entitle the individual disseminating the information to protection against an action" for defamation. *Boston v. Webb*, 73 N.C. App. 457, 461, 326 S.E.2d 104, 106 (1985).

¶ 14 Sheriff Defendants have failed to establish that, based solely on the pleadings and as a matter of law, qualified privilege precludes liability for Curry's email to Crump. The pleadings do not establish that Curry's email was made on a privileged occasion or that Curry's email, although defamatory, was of "sufficient public or social interest" to entitle Curry to protection against Plaintiff's defamation action. *See id.* (holding that dismissal pursuant to Rule 12(b)(6) was improper where "the public's interest in the matter . . . remain[ed] to be determined"). Furthermore, the pleadings do not establish that the circumstances warranted Curry to communicate that the assault charge against Plaintiff was related to Plaintiff's employer in the manner Curry did–with no context or supporting detail, just hours after Crump's inquiry. *See id.* (holding that dismissal pursuant to Rule 12(b)(6) was improper where the

defendant's "right to relay [the information] as he did remain[ed] to be determined").

¶ 15         Sheriff Defendants cite *Averitt v. Rozier*, 119 N.C. App. 216, 458 S.E.2d 26 (1995), as an example of a case in which qualified privilege applied. However, Sheriff Defendants do not explain how *Averitt* is similar to the present case, and we find no relevant similarities. In *Averitt*, this Court held that statements made by a sheriff's detective to a potential witness and an alleged victim during an ongoing criminal investigation were protected by the qualified privilege and affirmed summary judgment in the detective's favor. *Id.* at 219-20, 458 S.E.2d at 29. The facts in the present case are quite dissimilar from those in *Averitt*, and Sheriff Defendants have failed to demonstrate their entitlement to judgment as a matter of law on the defense of qualified privilege at this early stage. Judgment on the pleadings was improper.

¶ 16         Additionally, even assuming arguendo that qualified privilege applies, Plaintiff has alleged actual malice sufficient to defeat Sheriff Defendants' motion for judgment on the pleadings. "[A] qualified privilege may be lost by proof of actual malice on the part of the defendant." *Long v. Vertical Techs., Inc.*, 113 N.C. App. 598, 602, 439 S.E.2d 797, 800 (1994); *see also Averitt*, 119 N.C. App. at 219, 458 S.E.2d at 29 ("If the plaintiff cannot show actual malice, the qualified privilege becomes an absolute privilege, and there can be no recovery even though the statement was false."). This inquiry is sometimes described as whether the declarant lost the qualified privilege by abusing it. *See, e.g., Harris v. Procter & Gamble Mfg. Co.*, 102

N.C. App. 329, 331, 401 S.E.2d 849, 850 (1991) ("Even though a qualified privilege may provide a defense to a defamation action, if this privilege is found to be abused, it ceases to exist."). In a qualified privilege case,

> [a]ctual malice may be proven by evidence of ill-will or personal hostility on the part of the declarant . . . or by a showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity.

*Clark*, 99 N.C. App. at 263, 393 S.E.2d at 138 (quoting *Kwan-Sa You v. Roe*, 97 N.C. App. 1, 12, 387 S.E.2d 188, 193 (1990)).

¶ 17      Here, Plaintiff alleged that Curry

> published information regarding the Plaintiff to the WTVD Defendants, consisting of an allegation that the Plaintiff was charged criminally with assaulting a resident of Capital Nursing and/or of assaulting a person in connection with the Plaintiff's employment with Capital Nursing, and reported that the alleged victim was a Mr. Darry Chavis.

Plaintiff alleged that this information was false; that Sheriff Defendants "intended the statements to charge the Plaintiff with having committed an infamous crime, to impeach the Plaintiff in his trade and profession, and to subject the Plaintiff to ridicule, contempt and disgrace"; and that "[Sheriff] Defendants knew the statements were false . . . ." In reviewing Sheriff Defendants' motion for judgment on the pleadings, we must take these allegations as true and construe them in the light most favorable to Plaintiff. *See Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. Doing so,

Plaintiff has alleged actual malice sufficient to defeat Sheriff Defendants' motion for judgment on the pleadings asserting the defense of qualified privilege.

### 2. *Public Official Immunity*

¶ 18    Though the trial court granted judgment on the pleadings based on the qualified privilege, Sheriff Defendants argue that, in the alternative, the Sheriff's Order should be affirmed because Plaintiff's claim against Curry is barred by the doctrine of public official immunity. We address this argument as Sheriff Defendants raised it below and "[i]f the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

¶ 19    "Public official immunity precludes a suit against a public official in his individual capacity and protects him from liability as long as the public official 'lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption[.]'" *Green v. Howell*, 274 N.C. App. 158, 165, 851 S.E.2d 673, 679 (2020) (quoting *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976)). "A[] [public] employee, on the other hand, is personally liable for negligence in the performance of his or her duties proximately causing an injury." *Isenhour v. Hutto*, 350 N.C. 601, 610, 517 S.E.2d 121, 127 (1999) (quotation marks and citations omitted).

¶ 20     Our Supreme Court has "recognized several basic distinctions between a public official and a public employee, including: (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties." *Id.* (citations omitted). "[A] defendant seeking to establish public official immunity must demonstrate that all three of [these] factors are present." *McCullers v. Lewis*, 265 N.C. App. 216, 222, 828 S.E.2d 524, 532 (2019) (citation omitted); *see also Baznik v. FCA US, LLC*, 280 N.C. App. 139, 2021-NCCOA-583, ¶ 6 (same).

¶ 21     Sheriff Defendants contend that Curry, as Public Information Officer for the Wake County Sheriff's Office, is a public official. In their appellate brief in support of this argument, Sheriff Defendants characterize Curry's position as follows:

> Curry serves as the chief spokesman for the Sheriff Baker. He manages relationships with members of the media and the county's communication partners, maintains media accounts of the sheriff's office, creates press releases for its events, and handles public records requests received from the media and other members of the public. These are not ministerial tasks but rather discretionary acts involving personal deliberation, decision-making, and exercising judgment.

Sheriff Defendants argue that these qualities demonstrate that Curry exercises both discretion and a portion of the sovereign power. However, the pleadings do not support Sheriff Defendants' assertions regarding the nature of Curry's position and

its duties.

These assertions might be appropriately considered if presented in an affidavit in support of a motion for summary judgment. *See* N.C. Gen. Stat. § 1A-1, Rule 56(b) (2022) (providing that a "party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof"). But for the purpose of the instant motion for judgment on the pleadings, Sheriff Defendants have failed to show that, regarding the issue of public official immunity, no material issue of fact exists and that they are entitled to judgment as a matter of law. *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499.

**B. WTVD Defendants' Motion to Dismiss**

Plaintiff next argues that the trial court erred by granting WTVD Defendants' motion to dismiss. Plaintiff argues that WTVD Defendants are not entitled to the fair report privilege.

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citations omitted). "[T]he well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98,

176 S.E.2d 161, 163 (1970) (quotation marks and citation omitted). "A motion to dismiss pursuant to Rule 12(b)(6) should not be granted unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Isenhour*, 350 N.C. at 604-05, 517 S.E.2d at 124 (quotation marks, emphasis, and citation omitted). We review a trial court's order granting a Rule 12(b)(6) motion to dismiss de novo. *USA Trouser, S.A. de C.V. v. Williams*, 258 N.C. App. 192, 195, 812 S.E.2d 373, 376 (2018).[2]

¶ 25      The fair report privilege "exists to protect the media from charges of defamation." *LaComb v. Jacksonville Daily News Co.*, 142 N.C. App. 511, 512, 543 S.E.2d 219, 220 (2001).

> Courts in other jurisdictions have articulated the privilege protecting the media when reporting on official arrests:
>
> > Recovery is further foreclosed by the privilege a newspaper enjoys to publish reports of the arrest of persons and the charges upon which the arrests are based, as well as other matters involving violations of the law. This privilege remains intact so long as the publication is confined to a substantially accurate statement of the facts and does not comment upon or infer probable guilt of the person arrested.

---

[2] Though the WTVD Order states that the trial court considered exhibits filed by WTVD Defendants, WTVD Defendants' motion was not converted into a motion for summary judgment because each of the exhibits was a document referenced in Plaintiff's complaint. *See Holton v. Holton*, 258 N.C. App. 408, 419, 813 S.E.2d 649, 657 (2018) ("[A] document that is the subject of a plaintiff's action that he or she specifically refers to in the complaint may be attached as an exhibit by the defendant and properly considered by the trial court without converting a Rule 12(b)(6) motion into one of summary judgment.").

> Substantial accuracy is therefore the test to apply when a plaintiff alleges defamation against a member of the media reporting on a matter of public interest, such as an arrest.

*Id.* at 513, 543 S.E.2d at 221 (quoting *Piracci v. Hearst Corporation*, 263 F. Supp. 511, 514 (D. Md. 1966)).  The substantial accuracy test "does not require absolute accuracy in reporting.  It does impose the word substantial on the accuracy, fairness and completeness.  It is sufficient if [the statement] conveys to the persons who read it a substantially correct account of the proceedings." *Desmond v. News & Observer Publ'g Co.*, 241 N.C. App. 10, 26, 772 S.E.2d 128, 140 (2015) (quotation marks, brackets, and citation omitted).

¶ 26      Here, WTVD's 15 August 2019 broadcast stated that Plaintiff was "facing an assault charge," "[a]ccording to the warrant [Plaintiff] hit the victim in the face with a closed fist," and "[t]he Sheriff's Office telling us the charge is related to [Plaintiff's] job."  This broadcast was not merely substantially accurate, it was an almost verbatim recitation of information in the arrest warrant and Curry's email to Crump.  The warrant for Plaintiff's arrest charged Plaintiff with committing simple assault for "unlawfully and willfully . . . assault[ing] and strik[ing] Darry L. Chavis by striking the victim in the face with a close [sic] fist."  (Original capitalization omitted).  When Crump inquired whether this charge was related to Plaintiff's employment with Capital Nursing, Curry responded, "Related to his employer."

¶ 27      Plaintiff contends that the broadcast was not "substantially accurate" because

Crump's initial email to Curry indicated that WTVD "had some awareness that the assault charge may not be related to" Plaintiff's employment. Plaintiff underscores that on the morning of 15 August, Crump wrote to Curry, "I'm guessing it's domestic but if it's related to a client from Capital Nursing I'm interested in more details." But Curry responded that the charge was related to Plaintiff's employer, and that evening WTVD accurately reported that "[t]he Sheriff's Office telling us the charge is related to [Plaintiff's] job." Crump's initial belief that the charge may have been unrelated to Plaintiff's employment does not defeat the application of the fair report privilege. *See Orso v. Goldberg*, 665 A.2d 786, 789 (N.J. App. Div. 1995) (stating that the fair report privilege "protect[s] the media publisher even though the publisher does not personally believe the defamatory words he reports to be true")

¶ 28 Plaintiff also asserts that the fair report privilege is inapplicable because Curry's email was "an extremely flimsy basis on which to report that the Plaintiff assaulted a resident" at Capital Nursing. While we agree that Curry's email was an extremely flimsy basis upon which to make a report, contrary to Plaintiff's assertion, WTVD Defendants did not report that Plaintiff had assaulted a resident at Capital Nursing. Instead, WTVD Defendants accurately reported the charge as described in the warrant and Curry's statement that the charge was related to Plaintiff's employer.

¶ 29 Lastly, Plaintiff argues that the fair report privilege is inapplicable because

WTVD "had positive information that the assault charge was not related to the Plaintiff's employment." Plaintiff contends that this information consists of statements by an agent for Capital Nursing "that (1) there was no resident by the name of Darry Chavis at Capital Nursing and (2) that this incident did not occur at Capital Nursing." Plaintiff's argument is unavailing because the substantial accuracy test requires us to consider whether WTVD's reporting was accurate by comparison to the warrant and Curry's email, not by comparison to the events as they transpired. *See LaComb*, 142 N.C. App. at 514, 543 S.E.2d at 221 (determining whether a newspaper article was substantially accurate by reference to the relevant arrest warrants); *see also Yohe v. Nugent*, 321 F.3d 35, 44 (1st Cir. 2003) ("To qualify as 'fair and accurate' for purposes of the fair report privilege, an article reporting an official statement need only give a 'rough-and-ready' summary of the official's report; it is not necessary that the article provide an accurate recounting of the events that actually transpired."); *Oparaugo v. Watts*, 884 A.2d 63, 82 n.14 (D.C. 2005) (substantial accuracy "is judged by comparing the publisher's report with the official record"); *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 655 (Tex. App. 2008) ("[T]he accuracy of the publication is determined not by comparing it to the actual facts but to the law enforcement statement upon which the publication is based.").

¶ 30        Because WTVD's broadcast satisfied the substantial accuracy test, it is not actionable as defamation under the fair report privilege. The trial court did not err

by granting WTVD Defendants' motion to dismiss.

### III.   Conclusion

Sheriff Defendants have not demonstrated that the qualified privilege they assert defeats Plaintiff's defamation claim as a matter of law.  Accordingly, the trial court erred by granting Sheriff Defendants' motion for judgment on the pleadings. Because the fair report privilege applied to WTVD's broadcast, the trial court did not err in dismissing Plaintiff's claims against WTVD Defendants.

REVERSED AND REMANDED IN PART; AFFIRMED IN PART.

Judges ARROWOOD and HAMPSON concur.