WILMA K. HANTON, Plaintiff v. LAWRENCE I. GILBERT, in his personal and official capacity; EDWARD D. SALMON, in his personal and official capacity; PAUL HARDIN, in his personal capacity; and the UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, Defendants

No. 96-1009

(Filed 1 July 1997)

1. **Libel and Slander § 23 (NCI4th)— memo by department head—explanation of plaintiff's dismissal—qualified privilege**

The trial court did not incorrectly rule in a defamation action that defendant Gilbert had a qualified privilege with respect to a memo he distributed to department members where plaintiff had been employed at UNC in the Department of Biology maintaining an electron microscope and assisting faculty members in the use of the microscope; defendant Gilbert, the chair of the department, changed the department's policy and began charging for the use of the microscope and for plaintiff's time; plaintiff believed that the changed policy violated the terms of the grant with which the microscope had been bought and resisted the change; she was ultimately dismissed; and defendant Gilbert circulated the memo at issue here to explain the dismissal. The essential elements of a qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. Dr. Gilbert, as chair of the department, had an interest in the smooth running and morale of his department and distributed the memo only to members of the department in order to put an end to misleading rumors and inaccurate accounts of plaintiff's dismissal. Under these circumstances, the essential elements of a good faith privilege were satisfied. Furthermore, portions of the memo addressed plaintiff's accusations against him for which he had the privilege of self-defense.

**Am Jur 2d, Libel and Slander §§ 328 et seq.**

**Defamation: loss of employer's privilege to publish employee's work record or qualification. 24 ALR4th 144.**

2. **Libel and Slander § 29 (NCI4th)— memo by department head—explanation of plaintiff's dismissal—instructions—jury consideration limited to four statements—burden of proof**

The trial court did not err in a defamation action when it instructed the jury to limit its consideration to four particular statements in a memo explaining plaintiff's dismissal from the UNC Department of Biology, that plaintiff bore the burden of proving the falsity of these statements, and that plaintiff further had the burden of showing actual malice. The four statements submitted to the jury were the only statements which plaintiff claimed were false and the court correctly instructed the jury regarding the burden of proving falsity and actual malice because the court had determined as a matter of law that the memo from the department chair was privileged and a presumption arose in his favor that the statements were made in good faith and without malice.

**Am Jur 2d, Libel and Slander §§ 512-518.**

3. **Constitutional Law § 98 (NCI4th)— dismissal from employment—federal and state claims—dismissal of federal claim not res judicata as to state claim—state claim fully already litigated and relief obtained**

The trial court did not err by granting defendants' motion for summary judgment on plaintiff's state constitutional claim where plaintiff was dismissed from the UNC Biology Department and a memo written explaining the dismissal; plaintiff brought suit alleging violation of her state and federal constitutional rights to due process, violation of the state Whistleblower Act, and defamation; the case was removed to federal district court which granted summary judgment on all federal constitutional claims and remanded the remaining claims to state court; and the state trial court granted summary judgment for defendants on all but the defamation claim against the department chair in his individual capacity. Although the trial court erred by dismissing the state claims on the basis of *res judicata* because summary judgment in federal court on plaintiff's federal constitutional claim did not mandate dismissal of her state constitutional claim, plaintiff had already fully litigated and been afforded relief for the violation of procedural due process in her termination in that the Personnel Commission adopted an Administrative Law Judge's conclusion that due process had not been exercised and awarded back pay

HANTON v. GILBERT

[126 N.C. App. 561 (1997)]

and attorney's fees, the superior court affirmed, and plaintiff did not appeal that decision. Since plaintiff had already prevailed on a statutorily established claim for violation of procedural due process and been afforded relief, she has no additional cause of action on that issue under the North Carolina Constitution.

**Am Jur 2d, Constitutional Law §§ 813-815; Judgments §§ 539 et seq.**

4. **Public Officers and Employees § 58 (NCI4th)— whistleblower claim—summary judgment for defendants—no error**

The trial court did not err by granting summary judgment for defendants on plaintiff's claim under the Whistleblower Act where defendants supported their motion for summary judgment with evidence that plaintiff's termination was based on insubordination and the record does not reveal that plaintiff met her burden of coming forward with evidence that her alleged whistleblowing activity was a substantial causative factor for her dismissal. A *prima facie* claim under the Whistleblower Act consists of a plaintiff engaged in protected activity followed by adverse employment action with the protected conduct a substantial or motivating factor in the adverse action. Once a defendant presents evidence that the adverse action was based on a legitimate nonretaliatory motive, the burden shifts to plaintiff to present evidence raising a genuine issue of fact that plaintiff's actions under the Act were a substantial causative factor, or provide an excuse for not doing so. N.C.G.S. § 126-85(a).

**Am Jur 2d, Judgments §§ 203, 205.**

Appeal by plaintiff from judgment entered 16 February 1996 by Judge F. Gordon Battle and order entered 29 January 1996 by Judge Donald Stephens in Orange County Superior Court. Heard in the Court of Appeals 24 April 1997.

*McSurely, Dorosin & Osment, by Alan McSurely, Mark Dorosin and Ashley Osment, for plaintiff-appellant.*

*Michael F. Easley, Attorney General, by Thomas J. Ziko, Special Deputy Attorney General, and Barbara A. Shaw, Assistant Attorney General, for defendants-appellees.*

WYNN, Judge.

The University of North Carolina at Chapel Hill ("UNC") employed Wilma K. Hanton ("Hanton") as a Research Analyst I in the Department of Biology. Her duties included maintaining an electron microscope which UNC had purchased with monies from a 1984 National Institute of Health ("NIH") grant, teaching electron microscopy and assisting faculty members with research projects using the electron microscope.

Faculty members used the microscope without charge until Dr. Lawrence I. Gilbert, Chairman of the UNC Department of Biology, changed the policy on 1 January 1990 and began charging for use of the microscope and Ms. Hanton's time.

To implement the new policy, Dr. Edward D. Salmon, Chairman of the Electron Microscope Committee and Ms. Hanton's supervisor, informed Ms. Hanton that she would need to keep a daily log of her activities in the electron microscope facility. Ms. Hanton, however, believing that the new charges violated the terms of the grant, resisted the policy change of charging for microscope use and her time, and did not start keeping a record of her activity in the electron microscope facility until June 1990. Consequently, when Dr. Salmon reviewed her records in September 1990, he was unable to determine the use of the facility. He recommended her dismissal to Dr. Gilbert who in turn met with and wrote to Ms. Hanton on 1 October 1990 informing her that failure to follow the rules and policies of the department, including record keeping, would result in her termination.

In the spring of 1991, Dr. Salmon again examined Ms. Hanton's records and found them to be incomplete and in disarray. Subsequently, the Electron Microscope Committee met and discussed Ms. Hanton's refusal to adequately maintain records of her daily activity. The committee unanimously recommended Ms. Hanton's termination in a letter to Dr. Gilbert.

In response, Dr. Gilbert conducted a pre-dismissal hearing during which Ms. Hanton refused to say that she would obey the rules of the department and keep records. As a result, Dr. Gilbert dismissed her from her position effective 24 May 1991. Five days later, he circulated the following memo to members of the Department of Biology explaining Ms. Hanton's dismissal:

## HANTON v. GILBERT

[126 N.C. App. 561 (1997)]

As many of you know, Wilma Hanton was discharged from the Department of Biology on Friday, May 24. Since she has talked to many of you either before or after that event, I thought it best to inform you of the true sequence of events leading to her dismissal. On December 18, 1989, a memo was sent from me to the faculty of the department with a copy to W. Hanton initiating a series of fees for the use of the electron microscope and Ms. Hanton's time. This was in response to the recommendation of the Electron Microscope Committee and a direct result of the financial problems besetting the University and this department. . . . From January 1990 on, there were a series of incidents in which Ms. Hanton made it quite clear that she disagreed with the policy, challenged the policy and simply was not going to abide by it. Indeed, she refused to keep track of her time, refused to bill for her time, etc. and, in general, made it very difficult for the EM Committee and for anybody who wished to use the facility in accord with the departmental regulations. . . .

Since she did not follow my orders nor those of Prof. Salmon, she by definition, did not fulfill her job responsibilities and was given several "unsatisfactories" on her performance evaluation. This has led to a series of very unfortunate events instigated by Ms. Hanton. First, she appealed the performance evaluations made by Prof. Salmon, her supervisor. A three person committee composed of UNC SPA personnel heard this appeal and recommended that the performance evaluations stand as is. Chancellor Hardin so notified Ms. Hanton. The second action was her appeal to the Graduate Student Attorney General to prevent Mr. Ji-da Dai from receiving his doctorate because she accused him of stealing some of her data. This was absolutely untrue and it is of interest that after his doctoral seminar, she congratulated him, came to the Bird Room where she ate his food and toasted him with champagne. The Student Attorney General and faculty advisor examined the evidence and threw out her charges as they rightly should have. Having failed in those two actions, she turned her attention to me and filed complaints to the Dean of the College of Arts and Sciences. Among them were that I purloined some unknown letter written by Dean Williamson from the University Archives, a letter she could not describe and which does not really exist; that I stole her data, etc. All charges were dismissed by Dean Cell except for the accusation that I stole her data since there are specific guidelines indicating how such an accusation

**HANTON v. GILBERT**

[126 N.C. App. 561 (1997)]

must be handled, and this is ongoing. These events have nothing to do with her dismissal since she is obviously entitled to make appeals, take advantage of the grievance procedures, etc., and her slanderous accusations regarding my own integrity will ultimately be resolved in a court of law.

After discussing the situation of her insubordination and refusal to carry out the duties of her office with officials of the University, I sent Ms. Hanton a letter on May 23 indicating that a pre-dismissal hearing would be held on May 24 with me, W. Hanton and Collin Rustin from the Department of Human Resources. At that meeting, she was read the letter from the Electron Microscope committee to me dated May 10, 1991 and which is enclosed for your edification. . . . Since she refused to make any comments at that meeting, and after consultation with Mr. Rustin, I informed her that she was dismissed as an employee of the Department of Biology at the University of North Carolina at Chapel Hill effective immediately, i.e. May 24, 1991. . . .

This is a synopsis of the events leading to the dismissal of Ms. Hanton and I bring them to your attention only so that you know the real facts of the matter. The department and university, in general, cannot allow technical assistants to make the final decision as to how a facility will be run. . . .

For those of you who have listened to Ms. Hanton's accusations and innuendos [sic], I would be glad to talk to you in person regarding her many ongoing problems with the University beginning as a graduate student in the Department of Botany in 1967.

Dr. Gilbert attached to the memo a copy of the letter sent to him from the Electron Microscope Committee recommending Ms. Hanton's dismissal and explaining the reasons for their recommendation.

Following her dismissal, Ms. Hanton brought suit against Dr. Gilbert and Dr. Salmon in their personal and official capacities; the then Chancellor of UNC, Dr. Paul Hardin in his personal capacity; and UNC. She alleged violation of her state and federal constitutional rights to procedural due process, violation of the state Whistleblower Act (N.C. Gen. Stat. § 126-85) and defamation. The case was removed to the United States District Court for the Middle District of North Carolina which granted summary judgment for all defendants on the federal constitutional claim and remanded the remaining claims to state court. There, the trial court granted summary judgment in favor

of the defendants on all the remaining claims except Ms. Hanton's claim for defamation against Dr. Gilbert individually in his personal capacity. The ensuing trial on that issue resulted in a jury verdict in favor of Dr. Gilbert. Ms. Hanton appeals from the order granting summary judgment and the judgment rendered on the jury verdict.

Before this Court, Ms. Hanton contends that the trial court erred by: (I) Ruling that Dr. Gilbert had a qualified privilege in the defamation claim, (II) Improperly instructing the jury as to the defamation claim, (III) Granting summary judgment for defendants on the state constitutional claim on the grounds of res judicata, and (IV) Granting summary judgment for defendants on plaintiff's claim under the Whistleblower Act. We affirm the order and judgment of the trial court.

I.

**[1]** Plaintiff first contends that the trial court incorrectly ruled that Dr. Gilbert had a qualified privilege with respect to the 29 May 1991 memo that he distributed to department members. We disagree.

In considering the qualified privilege issue the trial court first determined as a matter of law that Dr. Gilbert's memo was libelous *per se*. "When a publication is libelous *per se*, a prima facie presumption of malice and a conclusive presumption of legal injury arise entitling the victim to recover at least nominal damages without proof of special damages." *Arnold v. Sharpe*, 296 N.C. 533, 537-38, 251 S.E.2d 452, 455 (1979). The parties do not dispute the trial court's ruling that the memo was libelous *per se*; however, in response, Dr. Gilbert raised the affirmative defense of qualified privilege and thus bore the burden of establishing that the publication of the defamatory statement was made on a privileged occasion. *Clark v. Brown*, 99 N.C. App. 255, 262, 393 S.E.2d 134, 138, *cert. denied*, 327 N.C. 426, 394 S.E.2d 167 (1990).

"Whether the occasion is privileged is a question of law for the court, subject to review, and not for the jury, unless the circumstances of the publication are in dispute, when it is a mixed question of law and fact." *Id.* (quoting *Shuping v. Barber*, 89 N.C. App. 242, 245, 365 S.E.2d 210, 212 (1988)).

A defamatory statement is qualifiedly privileged when made (1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right or duty, (3) on a

**HANTON v. GILBERT**

[126 N.C. App. 561 (1997)]

privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

*Id.* Thus, "[t]he essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Stewart v. Check Corp.* 279 N.C. 278, 285, 182 S.E.2d 410, 415 (1971).

In the subject case, the record indicates that Dr. Gilbert, as Chairman of the Department of Biology, had an interest in the smooth running and morale of his department. To protect against the undermining of employee morale, he distributed the memo in question only to members of the Department of Biology in order to put an end to misleading rumors and inaccurate accounts of Ms. Hanton's dismissal that were circulating in that department. We hold that under these circumstances the essential elements of a qualified privilege were satisfied. Furthermore, portions of Dr. Gilbert's memo addressed Ms. Hanton's accusations against him personally for which he had a privilege of self defense. *See Gregory v. Durham County Bd. of Educ.,* 591 F. Supp. 145, 156 (M.D.N.C. 1984). Therefore, we conclude that the trial court properly ruled that Dr. Gilbert had a qualified privilege with respect to the subject memo.

II.

[2] Ms. Hanton next contends that the trial court erred when it instructed the jury that it should limit its consideration to four particular statements on the 29 May memo, that she bore the burden of proving the falsity of these statements, and that she further had the burden of showing actual malice by Dr. Gilbert. We disagree.

Since the trial court determined as a matter of law that Dr. Gilbert's memo was privileged, a presumption arises in his favor that the statements were made in good faith and without malice. *Clark,* 99 N.C. App. at 262, 393 S.E.2d at 138. Furthermore, since Dr. Gilbert's presumption rebutted Ms. Hanton's presumption of actual malice, Ms. Hanton then had the burden of proving both the falsity of the charge and that it was made with actual malice. *See, Clark* at 262-63, 393 S.E.2d at 138; *Boston v. Webb,* 73 N.C. App. 457, 326 S.E.2d 104, *disc. review denied,* 314 N.C. 144, 332 S.E.2d 479 (1985). Thus, the trial court correctly instructed the jury regarding the burden of proving falsity and showing actual malice.

HANTON v. GILBERT

[126 N.C. App. 561 (1997)]

In order for a defamatory statement to be actionable, it must be false. *Long v. Vertical Technologies, Inc.*, 113 N.C. App. 598, 439 S.E.2d 797 (1994). The undisputed evidence in the record indicates that many of the statements in the subject memo were true. Since the four statements submitted to the jury were the only statements which plaintiff claimed were false and thus the only defamatory statements at issue, the trial court acted properly in presenting only those statements for the jury's consideration.

## III.

**[3]** Plaintiff next contends that the trial court erred by granting defendants' motion for summary judgment on her state constitutional claim because *res judicata* does not preclude relitigation of her claim. We agree that the doctrine of *res judicata* does not preclude her state claims; however, we nonetheless affirm the trial court's award of summary judgment for a different reason.

In its order granting summary judgment, the trial court concluded:

> [U]nder the doctrine of *res judicata* and collateral estoppel the Plaintiff cannot re-litigate anew her claim of wrongful dismissal. Such claim has been fully litigated adversely to the Plaintiff in the administrative proceedings with a determination that her employment termination was [for] just cause and was free of any substantial due process violation. Collateral estoppel would bar further review of that issue by this court. Similarly, the Plaintiff failed to satisfy the federal court that there was any competent evidence to support her claims in this case regarding unjust or wrongful termination. *Res judicata* should preclude further review.

> Wherefore, with regard to the Plaintiff's claims under the North Carolina Constitution and under G.S. 126-85, the Court finds and concludes that there exists no dispute as to any material fact and that all Defendants are entitled to judgment as a matter of law in their individual and official capacities.

Recently, in *Evans v. Cowan*, 122 N.C. App. 181, 468 S.E.2d 575, *aff'd*, 345 N.C. 177, 477 S.E.2d 926 (1996), we held that federal free speech and due process claims are not identical to state free speech and due process claims—even though the constitutional provisions are identical—because " 'we have the authority to construe our own constitution differently from the construction by the United States

**HANTON v. GILBERT**

[126 N.C. App. 561 (1997)]

Supreme Court of the Federal Constitution, as long as our citizens are thereby afforded no lesser rights than they are guaranteed by the parallel federal provision.' " *Id.* at 184, 468 S.E.2d at 577 (quoting *State v. Carter*, 322 N.C. 709, 713, 370 S.E.2d 553, 555 (1984)). Therefore, we concluded that "an independent determination of plaintiff's constitutional rights under the state constitution is required," and the trial court erred by dismissing the state claims on the basis of *res judicata. Id.* However, in the subject case, while we agree with Ms. Hanton's contention that summary judgment in federal court on her federal constitutional claim does not mandate dismissal of her state constitutional claim based on *res judicata*, we nonetheless find that summary judgment for defendants was proper.

The record reveals that, in her contested case hearing before an Administrative Law Judge (ALJ), Ms. Hanton alleged that defendants failed to exercise proper due process in her termination. The process required is set out in N.C. Gen. Stat. § 126-35 *et seq.* (1995). In his Recommended Decision, the ALJ concluded that "[t]he Respondent did not exercise proper due process in terminating the Petitioner's employment." The State Personnel Commission adopted the ALJ's conclusion and awarded plaintiff back pay and attorney's fees for defendants' procedural violation. The Superior Court then reviewed and affirmed the State Personnel Commission's decision. Ms. Hanton did not appeal this final determination. Thus, she has already fully litigated and been afforded relief for the violation of procedural due process in connection with her termination.

In *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992), our Supreme Court noted:

> This Court has recognized a direct action under the State Constitution against state officials for violation of rights guaranteed by the Declaration of Rights. *Having no other remedy*, our common law guarantees plaintiff a direct action under the State Constitution . . . [Moreover, w]hen called upon to exercise its inherent constitutional power to fashion a common law remedy for a violation of a particular constitutional right, however, the judiciary must recognize two critical limitations. *First, it must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power.* Second, in exercising that power, the judiciary must minimize the encroachment upon other branches of gov-

ernment—in appearance and in fact—by seeking the least intrusive remedy available and necessary to right the wrong.

*Id.* at 783-84, 413 S.E.2d at 290-91 (citations omitted) (emphasis added).

The legislature has established the necessary procedures to be followed where a state employee is terminated such as in the subject case. *See* N.C.G.S. § 126-35 *et seq.* The trial court found that defendants did not follow the procedural safeguards provided by the statute and awarded back pay and attorney's fees. Therefore, since plaintiff has already prevailed on a statutorily established claim for violation of procedural due process and been afforded relief, she has no additional cause of action on that issue under the North Carolina Constitution. Accordingly, we affirm the trial court's grant of summary judgment for defendant on plaintiff's state constitutional claim.

IV.

**[4]** Finally, Ms. Hanton contends that the trial court erred by granting summary judgment for defendants on her claim under the Whistleblower Act. We disagree.

N.C. Gen. Stat. § 126-85(a) (1995) provides:

No head of any State department, agency or institution or other State employee exercising supervisory authority shall discharge, threaten or otherwise discriminate against a State employee regarding the State employee's compensation, terms, conditions, location, or privileges of employment because the State employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, any activity described in G.S. 126-84, unless the State employee knows or has reason to believe that the report is inaccurate.

A *prima facie* claim under this statute consists of the following elements: "(1) [plaintiff] engaged in protected activity, (2) followed by an adverse employment action, and (3) that the protected conduct was a substantial or motivating factor in the adverse action." *Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 584, 448 S.E.2d 280, 282 (1994). Moreover:

[O]nce a defendant, moving for summary judgment, presents evidence that the adverse employment action is based on a legitimate non-retaliatory motive, the burden shifts to the plaintiff to present evidence, raising a genuine issue of fact, that his actions

under the Act were a substantial causative factor in the adverse employment action, or provide an excuse for not doing so.

*Aune v. University of North Carolina*, 120 N.C. App. 430, 434-35, 462 S.E.2d 678, 682 (1995), *disc. review denied*, 342 N.C. 893, 467 S.E.2d 901 (1996).

In the instant case, defendants supported their motion for summary judgment with evidence that Ms. Hanton's termination was based on insubordination. Our examination of the record reveals that Ms. Hanton failed to meet her burden of coming forward with evidence that her alleged whistleblowing activity was a substantial causative factor for her dismissal. As such, the trial court appropriately granted summary judgment for defendants.

Since we affirm the trial court's actions in this case, we need not address defendant's cross-assignment of error.

For the foregoing reasons, the order and judgment of the trial court is,

Affirmed.

Judges GREENE and TIMMONS-GOODSON.