JACK STRADER, Plaintiff v. SUNSTATES CORPORATION, a Corporation; ACTON CORPORATION, a Corporation; CROSSROAD DEVELOPMENT COMPANY, a Corporation; SUNSTATES DEVELOPMENT COMPANY, a Corporation; MORATOK VILLAGE SHOPPING CENTER, a Joint Venture; and SUNSTATES PROPERTIES, INC., a Corporation; Defendants

No. COA96-1407

(Filed 2 June 1998)

**1. Appeal and Error § 65 (NCI4th)— parties—corporate successor—notice of appeal treated as petition for cert**

A notice of appeal was treated as petition for certiorari and granted in an action arising from the breach of a lease and the foreclosure of the lessor's property where, during the course of the proceedings, there were name changes and mergers among the defendants and Sunstates Corporation was made a party to the action by an order allowing an amendment to the complaint but was not mentioned in the notice of appeal. The motion to amend did not specifically cite N.C.G.S. § 1A-1, Rule 25(d) or state that its purpose was to join Sunstates Corporation, but the amended complaint is sufficient to do so and the trial court correctly allowed such an amendment. However, Sunstates

Corporation is not named as a party in the notice of appeal and proper notice of appeal will be required for jurisdiction, although certiorari was granted here.

## 2. Appeal and Error § 340 (NCI4th)— assignment of error— not set out following subject headings

An appeal was heard in the discretion of the Court of Appeals even though it was subject to dismissal because the brief did not set out assignments of error following the subject headings. An appeal may be deemed abandoned when assignments of error are not set out in the appellate's brief, or when no reason or argument is stated or authority cited in support of the assignments of error. Language in *State v. Watson*, 80 N.C. App. 103, giving a party three ways to preserve exceptions in his or her brief, is merely dicta. N.C.R. App. P. 28(b)(5).

## 3. Landlord and Tenant § 10 (NCI4th)— lease—financing payments—implied covenant

The trial court did not err by finding that defendant Sunstates was under an obligation to make all financing payments involved in the construction of a shopping center on ground leased from plaintiff where the express terms of the lease are free from ambiguity and this provision is plainly implied by the language of the contract.

## 4. Landlord and Tenant § 25 (NCI4th)— breach of lease—contract damages—unpaid rents

The trial court did not err by awarding the landlord unpaid rents in an action arising from the breach of a ground lease for a shopping center resulting in foreclosure and loss by the landlord of the property. A lease is a contract which contains both property rights and contractual rights and contractual rights remain intact once the lease has been terminated.

## 5. Landlord and Tenant § 25 (NCI4th)— breach of lease— damages—value of reversionary interest with improvements

The trial court did not err in an action arising from the breach of a lease which resulted in foreclosure and loss of the property by the landlord by awarding the landlord the value of his reversionary interest in improvements even though such improvements were not required by the lease. The test for determining if damages are available is foreseeability; the damages the landlord

here suffered as a result of losing his property interest in the land and improvements were foreseeable when the parties entered the lease. Nothing in this opinion challenges the fact that the landlord's interest was lost at foreclosure; however, despite the loss by foreclosure, the landlord may still seek damages based on his contractual rights.

**6. Landlord and Tenant § 25 (NCI4th)— breach of lease— reversionary interest—valuation**

The trial court did not err in its valuation of a landlord's reversionary interest in a contract action arising from the breach of a shopping center lease and the loss by the landlord of his property interest in foreclosure where there was competent evidence to support the court's findings.

**7. Landlord and Tenant § 25 (NCI4th)— breach of lease—contract action—option—valuation of damages**

The trial court correctly considered the life expectancy of improvements in a contract action arising from the breach of a ground lease for property on which a shopping center was constructed which was lost by the landlord during a foreclosure. Defendant Sunstates's argument that the value of the reversion interest should have been measured at the expiration of options is faulty.

**8. Landlord and Tenant § 25 (NCI4th)— breach of lease— duty to mitigate—foreclosure of property**

The amount of damages awarded in a contract action arising from the breach of a lease and the subsequent foreclosure of a shopping center was properly not reduced by the landlord's failure to mitigate his damages where defendant's own actions in defaulting on the lease prevented the landlord from being able to mitigate. The argument that the landlord failed to mitigate by not making the financing payments even though the lease expressly stated that the landlord was not required to do so is illogical because it requires the landlord to mitigate his damages before the contractual breach ever occurred.

Appeal by defendants from judgment entered 12 June 1996 by Judge William C. Griffin, Jr. in Washington County Superior Court. Heard in the Court of Appeals 20 August 1997.

## STRADER v. SUNSTATES CORP.

[129 N.C. App. 562 (1998)]

*Ward and Smith, P.A., by Ryal W. Tayloe, for plaintiff-appellee.*

*Moore & Van Allen, P.L.L.C., by Denise Smith Cline, for defendant-appellants Acton Corporation, Sunstates Development Company, Moratok Village Shopping Center Venture, and Sunstates Properties, Inc.*

LEWIS, Judge.

Plaintiff-lessor instituted this action seeking damages for the breach of a lease which resulted in the foreclosure of the lessor's property. The trial court awarded plaintiff damages including the present value of lost rent and of his reversionary interest. Defendants appeal. We affirm.

On 26 September 1996 plaintiff Jack Strader granted a commercial ground lease to defendant Crossroad Development Company ("Crossroad"), for a portion of undeveloped land known as Phase II. The terms of the lease permitted but did not require Crossroad to develop the land for a shopping center with an Ames Department Store. In the event that Crossroad did choose to develop the land, Strader agreed to subordinate his interest in the property so Crossroad could acquire financing for construction and development. Under the terms of the lease, the initial rent was $500 per month, but would increase to $1666.67 per month when the Ames store opened. The term of the lease was twenty years but Crossroad retained the option to renew for five additional five-year terms. Pursuant to the lease, any construction or improvements on the land would become the property of Strader upon termination of the lease.

Crossroad chose to develop the land and, after obtaining a preliminary construction lien, secured Ames on a sublease. On 28 August 1987, Crossroad obtained financing from Lafayette Life Insurance Company in exchange for a $1.1 million note and deed of trust. As agreed, Strader signed the instrument, subordinating his interest to Lafayette. However, Strader did not sign the promissory note and thus was not personally, or primarily, liable for the debt.

During 1990, the parent company of Ames filed for bankruptcy and Ames vacated the premises in August of that year. For the next several months, Crossroad unsuccessfully sought a replacement subtenant. Crossroad ceased making the financing payments to Lafayette and thus defaulted on the loan. Strader was notified of the default, and on 22 March 1991 Lafayette's trustee foreclosed on the property.

Lafayette purchased the property at the foreclosure sale for $1,127,060.03. Crossroad had made all rental payments to Strader until the time of the foreclosure, but none since.

The trial judge, sitting without a jury, first determined that the lease contained an implied provision that Crossroad would make all necessary financing payments to any creditor. The judge then concluded that Crossroad breached the lease by (1) defaulting on the Lafayette loan and (2) failing to make rental payments to Strader for the remainder of the lease term. The trial court awarded Strader the present value of lost income stemming from the breach, which amounted to $132,299. In addition, after concluding that the value of the property on 8 May 2007, when it would revert to Strader, would be $1,143,000, the trial court awarded Strader $122,530 as the present value of the reversionary interest in the land and improvements. Thus, the court entered judgment against Sunstates Corporation (the corporate successor to Crossroad) in the total amount of $254,829. From this judgment, Sunstates Corporation appeals.

[1] Before reaching the merits of this appeal, we address two procedural arguments raised by appellee Strader. First, Strader argues that the appeal should be dismissed for failure to appeal by a real party in interest. We disagree.

Strader initially sued Acton Corporation, Crossroad Development Company, Sunstates Development Company, Moratok Village Shopping Center Venture, and Sunstates Properties, Inc. During the course of the proceedings below, Acton Corporation changed its name to Sunstates Corporation. In its order, the court found that Sunstates Development had merged into Sunstates Properties which had merged into Acton which had changed its name to Sunstates Corporation. Moratok was dissolved and Strader had filed a voluntary dismissal as to Crossroad. The trial court entered judgment against Sunstates Corporation. Notice of appeal was filed by Acton, Sunstates Development, Moratok, and Sunstates Properties.

Sunstates Corporation argues that the trial court erred in entering judgment against Sunstates Corporation because it was never joined as a party to the action. Strader argues that because judgment was entered against Sunstates Corporation only and Sunstates Corporation is not mentioned in the notice of appeal, the appeal should be dismissed because it was not brought in the name of a real party in interest. We find both arguments unpersuasive.

STRADER v. SUNSTATES CORP.

[129 N.C. App. 562 (1998)]

Sunstates Corporation was made a party to this action by order entered 18 March 1996 allowing Strader's motion to amend and supplement his complaint. The amended complaint added Sunstates Corporation's name to the caption and included amended allegations regarding Sunstates Corporation.

When a party's interest has been transferred to a non-party, the action may continue in the original party's name or, upon motion of any party, the transferee may be joined. N.C.R. Civ. P. 25(d). In this case, the interest of the remaining original parties was transferred to a new corporation, Sunstates Corporation. Although Strader's motion to amend does not specifically cite Rule 25(d) or state that its purpose is to join Sunstates Corporation, we believe that the amended complaint is sufficient to do so and that the trial court correctly allowed such an amendment. *Cf. Coffey v. Coffey,* 94 N.C. App. 717, 721, 381 S.E.2d 467, 470 (1989), *review dismissed by* 326 N.C. 586, 391 S.E.2d 40 (1990) (stating that, where the essence of a motion to amend a pleading is to join a party, consideration of the Rules of Civil Procedure regarding joinder is necessary). Sunstates Corporation's argument that the trial court erred in entering judgment against it is without merit.

Sunstates Corporation is not named as a party in the notice of appeal filed 9 July 1996. We assume that this omission was not an oversight but resulted from Sunstates Corporation's belief that it had never been joined as a party. Proper notice of appeal is required for this court to have jurisdiction over the matter. However, we treat the notice of appeal in this case as a petition for writ of certiorari, which we grant. We will hereafter refer to the appellant in this action only as "Sunstates."

[2] In Strader's second procedural argument, he asserts that Sunstates' appeal is subject to dismissal because Sunstates' brief does not set out assignments of error following the subject headings. We agree but suspend the requirement pursuant to our authority under Rule 2 of the North Carolina Rules of Appellate Procedure.

Rule 28 states, "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(5). We read this rule as setting out two scenarios under which an appeal may be deemed abandoned, (1) assignments of error are not set out in the appellant's brief, or (2) in support of which no reason or argument is stated or authority cited. The first requires the party to direct

the court to the appropriate assignment of error in the record and the second requires the party to cite authority or to make a legal argument for the extension or modification of the law.

We are cognizant of the dicta in *State v. Watson* that the rule is to be read in the disjunctive, giving a party three ways to preserve exceptions in his or her brief. 80 N.C. App. 103, 109-110, 341 S.E.2d 366, 371 (1986). In *Watson*, the State argued that because the defendant had not cited any authority in support of his positions, that he had abandoned his assignments of error pursuant to Rule 28(b)(5). We agree with the reasoning of the *Watson* court that such a reading of the rule would inhibit the ability of parties to bring cases of first impression before the appellate courts. However, we do not agree that Rule 28(b)(5) gives parties three independent means of preserving assignments of error. This language of *Watson* is merely dicta which neither has appeared in prior cases nor been adopted by subsequent cases. *See In re Appeal of Parsons*, 123 N.C. App. 32, 38, 472 S.E.2d 182, 186 (1996); *Hines v. Arnold*, 103 N.C. App. 31, 37, 404 S.E.2d 179, 183 (1991); *Stanley v. Nationwide Mut. Ins. Co.*, 71 N.C. App. 266, 268, 321 S.E.2d 920, 922 (1984); *Hotel Corp. v. Foreman's Inc.*, 44 N.C. App. 126, 128, 260 S.E.2d 661, 663, *review denied*, 299 N.C. 544, 265 S.E.2d 404 (1980).

Sunstates has provided this Court with a listing of its assignments of error by argument heading in a reply brief. We decide, in our discretion, to hear this appeal on its merits.

Sunstates argues that the trial court erred in awarding damages to Strader for breach of a lease which resulted in the foreclosure of Strader's property. We disagree and affirm.

### I. *Breach of the Lease*

[3] Sunstates first argues that the trial court erred by finding that the lease included an implied covenant that Sunstates would pay all financing payments incurred. We hold that the trial court was correct.

"When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law." *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973). For the reasons discussed below, we hold that the lease in this case is unambiguous and that the intention of the parties is a question of law.

STRADER v. SUNSTATES CORP.

[129 N.C. App. 562 (1998)]

The lease does not contain, in so many words, a provision requiring Sunstates to make all financing payments. "A contract, however, encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion." *Id.* at 410, 200 S.E.2d at 624 (citing 4 Williston, *Contracts* § 601B (3d ed. 1961)). Our Supreme Court in *Lane* described the doctrine of implication of unexpressed terms as follows:

> Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties . . . .

*Id.* at 410, 200 S.E.2d at 625 (citing 17 Am.Jur. 2d *Contracts* § 255 at 649 (1964)).

The parties' lease contains several express terms which make it clear that Sunstates is obligated to make all financing payments. Section Ten of the lease states "Lessee intends to finance the construction of the improvements . . . . Lessor will subordinate its interest in the demised premises to such financing and will cooperate with Lessee in obtaining the same and will execute any instrument, *except notes or personal guarantees* . . . ." Later portions of the same section provide that if the lessor is called upon to subordinate his interest, the lessee will obtain a personal guaranty and indemnification and hold harmless agreement from its principals. Because the lease specifically discusses the financing of improvements, but expressly releases Strader from any personal responsibility for the payments, the only logical implication is that Sunstates would be personally responsible for making the payments.

This conclusion is further supported by other provisions of the lease which state that if the lessee fails to make payments that the lessor *may, at its option,* make such payments and hold the lessee in default under the lease. It is clear from the use of the word "may" that the lessor is not required to make any such payments and it is equally

clear that if the lessee can be held in default for failing to make payments that the lessee is, in fact, obligated under the lease to make such payments.

We hold that the lease includes an implied term that Sunstates is obligated to pay any financing charges incurred in constructing improvements on the leased property. The express terms discussed above are free from ambiguity and the provision that we have determined to exist in the lease is one which is plainly implied by the language of the contract. The trial court did not err in finding that Sunstates was under an obligation to make all financing payments.

Sunstates puts forth two arguments which suggest that it should not be held liable for Strader's loss. First, Sunstates argues that Strader bore the risk of such a loss when he agreed to subordinate his interest in the property to assist the tenant in securing financing. We consider Strader's actions in light of the contract between the parties. While we agree that Strader assumed the risk that he might lose his property, we do not agree that he assumed the risk that he would be left without a remedy against the breaching party.

Sunstates' second argument is that it was not Sunstates' failure to make the financing payments but Strader's failure to cure Sunstates' default prior to foreclosure that caused Strader's loss. As discussed above, Sunstates was obligated under the contract to make all financing payments. The contract allowed, but did not require, Strader to cure Sunstates' default.

## II. *Damages*

[4] Sunstates argues that the trial court erred in awarding Strader unpaid rents, because the right to receive rent is a property right, and property rights arising from a lease are extinguished when the lease is terminated. Sunstates further argues that the trial court erred in awarding Strader the value of his reversionary interest with improvements because such improvements were not required by the lease. We find that the trial court correctly calculated and awarded contract damages.

A lease is a contract which contains both property rights and contractual rights. *See* Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 12-2 (4th ed. 1994). Property rights include the right to receive unpaid rents and the reversionary right in the leasehold. Contract rights include the right to sue for breach of express and implied covenants and the right to

STRADER v. SUNSTATES CORP.

[129 N.C. App. 562 (1998)]

sue for consequential damages stemming from a breach of a lease. Once a lease has been terminated, all property rights are extinguished; any contractual rights, however, remain intact. *See Holly Farm Foods v. Kuykendall*, 114 N.C. App. 412, 415, 442 S.E.2d 94, 96 (1994).

The lease in this case was terminated by foreclosure on 22 March 1991. After that date, Sunstates could be liable only for contractual damages. As a general rule, the injured party in a breach of contract action is awarded damages which attempt to place the party, insofar as possible, in the position he would have been in had the contract been performed. *Service Co. v. Sales Co.*, 259 N.C. 400, 415, 131 S.E.2d 9, 21 (1963).

The damages usually available to a landlord in a breach of a lease case are "the amount of rent the lessor would have received in rent for the remainder of the term, less the amount received from the new tenant." *Holly Farm Foods*, 114 N.C. App. at 415, 442 S.E.2d at 96. However, because of the foreclosure, Strader could not relet the property and lost his reversionary interest in the property.

Under this lease the tenant was responsible for all expenses of the property, such as taxes and utilities, so the full amount of the rent was profit to Strader. Thus, the proper amount of damages is the present value of the rent for the remainder of the term and the present value of his reversionary interest at the end of the term. This is precisely the formula that the trial court employed.

Nonetheless, Sunstates argues that the trial court erred in that it awarded damages based on property rights which were lost when the lease was terminated. It is true that the trial court's order refers in several places to the failure of Sunstates to pay rent due after March 1991. There was no rent due after foreclosure, however, and the court's findings on this point are meaningless. A review of the trial court's order reveals that the court properly awarded contract, not property, damages. Conclusion of Law number 9 states:

> In order to place Strader as nearly as possible in the condition he would have occupied had the contract not been breached, Strader is entitled to recover from Sunstates the present value of his lost profits (the net rental income) and the fair market value of the land and improvements that would have reverted to Strader upon termination of the lease, reduced to its present value as of the date of the breach.

We find that the trial court properly awarded contract damages. The fact that the word "rent" is used to measure damages and the fact that the contract damages awarded resembles that which would be awarded for property damages are irrelevant where contract damages are correctly measured.

**[5]** Sunstates also argues that the trial court erred in awarding Strader the value of his reversionary interest with improvements because such improvements were not required by the lease. It is true that the parties in this case executed a ground lease which allowed, but did not require, the tenant to construct and maintain improvements. Thus, under the lease, Strader could have received his reversionary interest after the end of the lease term with either no improvements or improvements in disrepair.

The test for determining if damages are available to a plaintiff is one of foreseeability. *Stanback v. Stanback*, 297 N.C. 181, 186, 254 S.E.2d 611, 616 (1979) ("When an action for breach of contract is brought, the damages recoverable are those which may reasonably be supposed to have been in the contemplation of the parties at the time they contracted."). We believe that these damages, the loss of the value of the improvements to the reversionary interest, were foreseeable.

Sunstates points to *DeTorre v. Shell Oil Co.*, 84 N.C. App. 501, 353 S.E.2d 269 (1987) for the proposition that such an award is not permissible. In *DeTorre*, the lessor and tenant had entered into a ground lease which allowed the tenant to use the property for any lawful purpose including the construction of a gas station. The tenant was further given the right to construct improvements to make any alterations to the improvements constructed. During the course of the lease, the tenant destroyed certain improvements it had constructed and replaced them with more modern and useful improvements. The lessor brought an action alleging that the tenant had breached the lease by removing and destroying the existing structures. This Court affirmed the trial court's dismissal of the action finding that the lease allowed the tenant to alter the improvements. *DeTorre*, 84 N.C. App. at 505, 353 S.E.2d at 272. Furthermore, this Court found that, although a lessor generally acquires an interest in fixtures once they are attached to the land, the fixtures at issue were meant only for the exercise of a trade and, therefore, belonged to the tenant. *Id.*

Sunstates assigns particular weight to the following language in *DeTorre*:

STRADER v. SUNSTATES CORP.

[129 N.C. App. 562 (1998)]

> [T]he lease did not require that any improvements be constructed on the vacant premises. This is simply a ground lease. If the plaintiffs had leased to defendants the premises with buildings thereon, defendants could not tear down those buildings without injuring plaintiffs' interest in them. But that is not the case here.

*Id.* at 505, 353 S.E.2d at 272. This language merely points out that, in that case, the tenant did not *breach* the lease by destroying the improvements.

The issue presented in this case, however, is whether the damages Strader suffered as a result of losing his property interest in the land and improvements were foreseeable when the parties entered the lease. We hold that such damages were foreseeable. Moreover, we note that once the tenant constructed a shopping center on the leased premises, the building became a structure in which the lessor acquired a property interest. Unlike a gas station, the fixtures associated with a shopping center are not so specific to any particular trade as to remain the property of the tenant.

Sunstates asserts that our affirmance of the trial court's award of damages will disturb the settled rule that the foreclosure of a senior lien extinguishes junior property interests. This assertion is inaccurate. Nothing in this opinion challenges the fact that Strader's interest in his land was lost at foreclosure. We merely say that, despite the loss by foreclosure, Strader may still seek damages based on his contractual rights. Strader subordinated his interest to the lender, but his contractual rights remained intact.

### III. *Valuation of the Reversionary Interest*

**[6]** Sunstates next argues that the trial court erred in valuation of the reversionary interest. We disagree.

Strader's Phase II property was sold together with adjacent Phase I property for $1.5 million in March 1996. The total square footage of Phases I and II property equaled 95,000 square feet. Thus Strader received $15.79 per square foot at the March 1996 sale. Multiplying this price per square foot by the square footage in Strader's Phase II property, 47,000 square feet, the trial judge concluded that as of the March 1996 sale, Strader's Phase II property was worth $742,000. Using an inflationary index of 4%, he then concluded that the future value of this property as of 8 May 2007, the date on which the prop-

erty would have reverted to Strader, was $1,143,000. Using a discount rate of 14%, the trial judge then computed that the present value of this property was $122,530.

The thrust of Sunstates' argument is that the Phase II property should not have been attributed the same price per square foot as the Phase I property because the Phase II property was almost entirely vacant at the time of the March 1996 sale, whereas Phase I was fully occupied. Because an occupied shopping center is naturally more valuable than a vacant one, Sunstates argues that Phases I and II should have been severed for valuation purposes, with Phase I contributing a greater percentage of the $1.5 million sale price. Sunstates' argument is without merit.

At trial, the judge heard extensive testimony from both Strader's appraiser and Sunstates' appraiser as to the value of the property. Strader's appraiser estimated the present value of the land and improvements to be $129,500. Sunstates' appraiser valued the land and improvements at $55,172. Sunstates' appraiser testified about the decreased value of shopping centers which have lost an anchor tenant and cannot find a replacement. After hearing all of this evidence, the trial judge found as fact that the appropriate value was $122,530.

A trial court's findings of fact are binding on appeal if supported by competent evidence. *Foster v. Foster Farms, Inc.*, 112 N.C. App. 700, 706, 436 S.E.2d 843, 847 (1993). There was certainly competent evidence to support the court's findings and we will not disturb them.

[7] Sunstates also contends that, in taking into account the improvements on the land, the trial judge failed to consider the life expectancy of these improvements. Because Sunstates retained the unilateral ability to exercise five five-year options, it argues that the value of the reversion should have been measured at the expiration of these options on 8 May 2031. Because Strader's appraiser testified that the improvements had a 45-year life expectancy, Sunstates argues that the improvements would have been worth nothing in 2032.

This argument is faulty on two grounds. First, it assumes that Sunstates would have let the improvements fall into ruin without ever refurbishing them. Second, it permits Sunstates to take advantage of all of its renewal options even though it is specifically prevented from

ever being able to exercise these options because of its breach. Of course, if the court were to assume that all five five-year options would be exercised the court would have to add the amount of rent due during those periods to Strader's damages award.

### IV. *Duty to Mitigate*

[8] Sunstates' final argument is that any amount of damages awarded should be reduced due to Strader's failure to mitigate his damages. We disagree.

Typically, in a leasing context, the duty to mitigate means that a landlord must use reasonable efforts to relet the premises to a new tenant. *Isley v. Crews*, 55 N.C. App. 47, 51, 284 S.E.2d 534, 537 (1981). But here, Strader no longer owns the property; he could not possibly find another tenant. Sunstates' own actions in defaulting on the loan have prevented Strader from being able to mitigate.

Nonetheless, Sunstates argues that Strader failed to mitigate his damages when he did not prevent the foreclosure by making financing payments to Lafayette, even though the lease expressly stated that Strader was not required do so. This argument is illogical because it requires Strader to mitigate his damages before the contractual breach ever occurred. The duty to mitigate damages arises only after a breach occurs. *See Monger v. Lutterloh*, 195 N.C. 274, 280, 142 S.E. 12, 16 (1928). Here the date of the breach was 22 March 1991, the date of foreclosure. Sunstates argues that Strader should have mitigated his damages by preventing foreclosure. Because efforts to prevent foreclosure would necessarily have to be made prior to the date of breach, Sunstates' argument has no merit.

For the foregoing reasons, the trial court's judgment is

Affirmed.

Judges JOHN and SMITH concur.