MARKET AMERICA, INC., Plaintiff v. ROBIN CHRISTMAN-ORTH, Defendant

No. COA98-1118

(Filed 5 October 1999)

## 1. Libel and Slander— qualified privilege—summary judgment

The trial court did not err in an action arising from defendant working with two multi-level sales companies by granting summary judgment for Market America on defendant's counterclaim for libel where the communication was protected by a qualified privilege and defendant did not come forward with evidence of actual malice or excessive publication.

## 2. Libel and Slander— employer not vicariously liable for torts of independent contractor—uncertainty as to what was said—summary judgment

The trial court did not err in an action arising from defendant working with two multi-level sales companies by granting sum-

MARKET AMERICA, INC. v. CHRISTMAN-ORTH

[135 N.C. App. 143 (1999)]

mary judgment for Market America on defendant's counterclaim for slander. An employer is not vicariously liable for the torts of an independent contractor and defendant could not recall when she listened to the voicemail in question, did not remember whose voicemail she listened to, could not remember precisely what was said, and had no witnesses or recordings.

**3. Employer and Employee— non-competition clause—valid**

Market America's covenant not to compete was not unreasonable as a matter of law where it contained no fixed geographic restriction and it was likely that it was intended to reach the entire United States, but the covenant was operative for only six months and forbade participation only in those companies using a similar matrix marketing structure or handling similar products to that of Market America.

**4. Employer and Employee— covenant not to compete—independent distributor**

A covenant not to compete was applicable to an independent distributor.

**5. Employer and Employee— covenant not to compete—applicable to current distributor**

A covenant not to compete was applicable to a current distributor even though the agreement contained language referring to the period after termination or resignation. Market America certainly intended to prohibit competition by those still working as distributors for the company.

**6. Employer and Employee— covenant not to compete—legitimate business purpose**

A non-competition clause was valid where defendant argued that there was no legitimate business purpose for restricting distributors from participating in a business venture with a "similar matrix marketing system," but Market America's interest in protecting the integrity and viability of the business is legitimate. Moreover, the covenant expired six months from the date of termination or resignation.

**7. Unfair Trade Practices— libel—qualified privilege—no damages**

The trial court did not err by granting summary judgment for plaintiff on defendant's counterclaim for an unfair and deceptive

MARKET AMERICA, INC. v. CHRISTMAN-ORTH

[135 N.C. App. 143 (1999)]

trade practice based upon libel where defendant's reliance upon *Ellis v. Northern Star Co.*, 326 N.C. 219, was unfounded. The communication in this case was protected by a qualified privilege and there was no evidence that defendant suffered actual injury.

**8. Unfair Trade Practices— non-competition clause—valid**

Defendant failed to establish a triable issue of fact as to her counterclaim for unfair or deceptive trade practices where she contended that Market America inequitably asserted its power and position, but the non-competition clause was valid and enforceable and defendant presented no facts to show any immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct on the part of Market America.

**9. Wrongful Interference— summary judgment—no business relationship—no malice**

The trial court properly granted summary judgment for Market America on defendant's counterclaim for tortious interference with business relations where plaintiff had no business with which Market America could interfere and there was no showing of actual malice by Market America.

Appeal by defendant from order entered 2 June 1998 by Judge William H. Freeman in Guilford County Superior Court. Originally heard in the Court of Appeals 9 June 1999. Petition for Rehearing allowed on 22 September 1999.

*Womble Carlyle Sandridge & Rice, PLLC, by Keith W. Vaughan, Pressly M. Millen, and Christine Sandez, for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, L.L.P., by Jon Berkelhammer and John J. Korzen, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

On 24 August 1999, defendant filed with this Court a "Petition for Rehearing" pertaining to our decision herein filed 20 July 1999 and reported at 134 N.C. App. 234, 517 S.E.2d 645 (1999). Pursuant to Rule 31 of the North Carolina Rules of Appellate Procedure, we allowed the petition on 22 September 1999 but stipulated that the case would be reconsidered without further argument or briefing. The following opinion supersedes and replaces the opinion filed 20 July 1999.

Robin Christman-Orth (defendant) appeals from an order granting summary judgment to Market America, Inc. (Market America) on defendant's counterclaims for libel, slander, unfair trade practices, tortious interference with business relations, and restraint of trade. In addition, defendant challenges the trial court's ruling which permitted Market America to amend its reply to include various affirmative defenses. Having judiciously examined the record before us, we affirm the order of the trial court.

Market America, a North Carolina corporation, is a multi-level product brokerage company which distributes approximately 300 consumer products through a network of approximately 75,000 independent distributors. The distributors earn money by purchasing products from Market America at wholesale prices and then selling those products to consumers at retail prices. Distributors also build sales organizations of other independent distributors and earn commissions from training and managing those sales organizations. Market America's distribution system is based on a binary matrix marketing plan whereby each distributor recruits, trains, and manages two sales organizations of other independent distributors.

Defendant is a citizen and resident of Pennsylvania. Prior to working for Market America, defendant operated a travel agency and worked as a regional sales representative for J&J Snack Food Corporation. On 18 March 1995, defendant executed an Independent Distributor Application and Agreement (the Agreement) with Market America defining the relationship between the company and its independent distributors. Under Paragraph 21 of the Agreement, defendant accepted the following terms:

I agree that the marketing plan, genealogy reports, distributor list and official literature are proprietary information and are considered trade secrets of the company as construed [in] N.C.G.S. § 66-152. I agree not to enter into competition with Market America by participating as a[n] Independent Contractor, consultant, officer, shareholder, director, employee or participant of another company or direct sales program using a similar matrix marketing structure or handling similar products to that of Market America or involving a Distributor of Market America in such a program for a period of six months from my written resignation or termination as an Independent Distributor of Market America. I agree that if I breach this covenant that Market America shall be entitled to a restraining order in a court of com-

MARKET AMERICA, INC. v. CHRISTMAN-ORTH

[135 N.C. App. 143 (1999)]

petent jurisdiction and I shall be liable to pay no less than $2,000.00 in damages per breach and legal cost.

When this lawsuit arose, defendant had not resigned, nor had she been terminated as an Independent Distributor of Market America.

Club Atlanta Travel, Inc. (CAT) is also a multi-level sales company using a binary marketing plan. CAT sells travel services such as vacations and airline flights. In September of 1996, defendant's husband became an independent distributor for CAT, and while defendant did not become a CAT distributor, she admittedly participated in marketing the company's travel products and encouraged other Market America distributors to take advantage of CAT's business opportunities. On 13 December 1996, general counsel for Market America sent a letter to defendant stating that her involvement with CAT's commercial enterprise violated the terms of the Agreement. Defendant, through her attorney, replied that she had done nothing in contravention of the Agreement by participating in the CAT venture, because CAT did not market any of the same products as did Market America. Defendant further indicated that she would continue to engage in CAT business.

On 29 January 1997, Market America filed a complaint against defendant seeking a temporary restraining order, a permanent injunction, and money damages for breach of contract and misappropriation of Market America's trade secrets. A temporary restraining order requiring defendant to refrain from recruiting Market America distributors into other business ventures was issued that same day. On 7 February 1997, Market America's President and Chief Executive Officer, J.R. Ridinger, sent a Follow-Up Bulletin (the bulletin) to Market America's Advisory Counsel Members, which consisted of the company's top twenty independent distributors, and the Certified Trainers, which consisted of approximately sixty-five independent distributors who were responsible for training other distributors. The bulletin stated that defendant was one of two individuals against whom Market America had prevailed in North Carolina's courts. Although the bulletin mistakenly referred to the temporary restraining order against defendant as an injunction, a copy of the actual order was attached to and distributed with the bulletin.

On 8 April 1997, defendant filed an answer asserting, in addition to her defenses, counterclaims for (1) libel, (2) slander, (3) unfair trade practices under section 75-1.1 of the North Carolina General Statutes, (4) interference with business relations, (5) restraint of

MARKET AMERICA, INC. v. CHRISTMAN-ORTH

[135 N.C. App. 143 (1999)]

trade in violation of section 75-1 of the General Statutes, and (6) money owed in the amount of $200. The libel claim is based on the bulletin, which defendant contends defamed her by allegedly likening her to "termites," "parasites," and "vermin," by stating that she "had been attempting to dissuade Distributors from Market America into CAT," and by stating that Market America had obtained an injunction, as opposed to a temporary restraining order, against defendant.

The counterclaim for slander is based on two voicemail messages. The first message is one allegedly left by Scott Tucker, an independent distributor for Market America. According to defendant, Tucker contacted individuals within his business organization and stated that defendant was involved with CAT but would end such involvement within six months and go on to something else. The message also discouraged other distributors from becoming involved in CAT, stating that defendant was only motivated by self-interest and greed. The second voicemail message is one allegedly left by Ridinger which supposedly "compared Defendant to members of the recently departed Heaven's Gate cult in California."

As to defendant's unfair trade practices claim, she generally contends that Market America's alleged libel of defendant and its attempt to enforce Paragraph 21 of the Agreement constituted unfair and deceptive acts or practices under section 75-1.1 of the General Statutes. Similarly, defendant's counterclaim for interference with business relations alleges that Market America prevented people from doing business with defendant by threats and intimidation. Lastly, defendant's claim for restraint of trade asserts that Market America had no legitimate business purpose for attempting to use Paragraph 21 of the Agreement to prevent defendant from entering into other business ventures which do not involve competing products.

Market America's original reply, filed 10 June 1997, averred only that defendant's counterclaims failed to state claims for relief. Then, on 7 May 1998, Market America filed a motion to amend its reply to add several affirmative defenses, including (1) truth, (2) qualified privilege, and (3) lack of effect on any North Carolina business operations of defendant. Plaintiff moved for summary judgment as to defendant's counterclaims on 22 May 1998. Both motions were heard on 1 June 1998, and on 2 June 1998, the trial court entered an order granting the motions. Defendant appeals.

**MARKET AMERICA, INC. v. CHRISTMAN-ORTH**

[135 N.C. App. 143 (1999)]

**[1]** By her first assignment of error, defendant contends that the trial court improvidently entered summary judgment for Market America on defendant's libel claim. We cannot agree.

The device known as summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c). For a defending party to prevail on a motion for summary judgment, the party must demonstrate that " '(1) an essential element of [the claimant's] claim is nonexistent . . . [2] [the claimant] cannot produce evidence to support an essential element of [her] claim, or . . . [3] [the claimant] cannot surmount an affirmative defense which would bar the claim.' " *Clark v. Brown*, 99 N.C. App. 255, 260, 393 S.E.2d 134, 136-37 (quoting *Shuping v. Barber*, 89 N.C. App. 242, 244, 365 S.E.2d 712, 714 (1988)) *disc. review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990), *quoted in Gibson v. Mutual Life Ins. Co. of N.Y.*, 121 N.C. App. 284, 286, 465 S.E.2d 56, 58 (1996). In determining whether summary judgment is proper, the trial court, and the reviewing court, must construe the evidence in the light most favorable to the non-moving party, who must be given the benefit of all favorable inferences regarding the evidence. *Id.* Therefore, the question confronting us is whether, taken in the light most favorable to defendant, the evidence sufficiently established any genuine issue of fact as to whether Market America libeled defendant. We hold that it did not.

Defendant contends that statements made by Ridinger in the 7 February 1997 bulletin were libelous *per se*, in that they impeached defendant in her profession and otherwise subjected her to contempt. The statements in question include insinuations that by participating in the CAT enterprise, defendant behaved in a manner that constituted unfair competition and was "blatantly unethical and illegal." Defendant further takes exception to statements that allegedly compared her to termites, parasites, and vermin who act out of "pure greed." Equally offensive to defendant was the statement that she "had been attempting to dissuade Distributors from Market America into CAT." Market America, on the other hand, argues that assuming, without conceding, that the challenged statements were libelous *per se*, the same were qualifiedly privileged.

Libel is defined as written defamation. *Phillips v. Winston-Salem/Forsyth County Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994).

"[A] publication is libelous *per se,* or actionable *per se,* if, when considered alone without innuendo: (1) It charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to ridicule, contempt, or disgrace, or (4) it tends to impeach one in his trade or profession."

*Martin Marietta Corp. v. Wake Stone Corp.,* 111 N.C. App. 269, 276, 432 S.E.2d 428, 433 (1993) (quoting *Ellis v. Northern Star Co.,* 326 N.C. 219, 224, 388 S.E.2d 127, 130 (1990)). However, even where a statement is found to be actionable *per se,* the law regards certain communications as privileged. A qualified privilege will prevent liability for a defamatory statement, when the statement is made:

"(1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right, or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest."

*Phillips,* 117 N.C. App. at 278, 450 S.E.2d at 756 (quoting *Clark,* 99 N.C. App. at 262, 393 S.E.2d at 138). "The essential elements for the qualified privilege to exist are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner and [to] the proper parties only." *Long v. Vertical Technologies, Inc.,* 113 N.C. App. 598, 602, 439 S.E.2d 797, 800 (1994). Whether a communication is privileged is a question of law for the court to resolve, unless a dispute concerning the circumstances of the communication exists, in which case it is a mixed question of law and fact. *Phillips,* 117 N.C. App. at 278, 450 S.E.2d at 756. Where the privilege is applicable, a presumption arises "that the communication was made in good faith and without malice." *Id.* The burden then falls upon the claimant to show either actual malice on the part of the declarant or excessive publication. *Harris v. Proctor & Gamble,* 102 N.C. App. 329, 332, 401 S.E.2d 849, 851 (1991).

In the instant case, the record indicates that Ridinger, as President of Market America, had legitimate interests in protecting the company against unfair competition through the unauthorized use of its trade secrets, encouraging company loyalty, and reassuring independent distributors that the company had been actively working to protect the integrity of their organizations. To apprise managing distributors of the threat posed by individuals seeking to recruit

Market America distributors into CAT and the steps taken to elimi-
nate the threat, Ridinger forwarded a bulletin to Market America's
Advisory Counsel Members and Certified Trainers describing the rel-
evant circumstances while attempting to boost morale. Defendant
contends that the bulletin could have been distributed to as many as
500 people. She bases this contention on the testimony of Marc
Ashley, Market America's Vice President of Administration, that he
did not recall whether the bulletin was sent to anyone other than the
named recipients. Defendant, however, has not presented any evi-
dence to show that the bulletin was forwarded to anyone outside of
the 85 Advisory Council Members and Certified Trainers. We con-
clude that under these circumstances, the communication was pro-
tected by a qualified privilege, and since defendant has failed to come
forward with any evidence of actual malice or excessive publication,
the trial court did not err in entering summary judgment for Market
America on defendant's libel claim.

**[2]** Defendant further argues that the trial court erred in granting
Market America's motion for summary judgment with regard to her
slander claim. We must disagree.

"Slander is defined as 'the speaking of base or defamatory words
which tend to prejudice another in his reputation, office, trade, busi-
ness, or means of livelihood.' " *Lee v. Lyerly*, 120 N.C. App. 250, 252,
461 S.E.2d 775, 777 (1995) (quoting *Long*, 113 N.C. App. at 601, 439
S.E.2d at 800), *rev'd on other grounds*, 343 N.C. 115, 468 S.E.2d 60
(1996). Slander is actionable either *per se* or *per quod. Id.* Statements
that are slanderous *per se* include "accusation[s] of crimes or
offenses involving moral turpitude, defamatory statements about a
person with respect to [her] trade or profession, and imputation[s]
that a person has a loathsome disease." *Gibby v. Murphy*, 73 N.C.
App. 128, 131, 325 S.E.2d 673, 675 (1985). To fall within the class of
slander *per se* as concerns a person's trade or profession, the defam-
atory statement "must do more than merely harm a person in [her]
business. The false statement '(1) must touch the plaintiff in [her]
special trade or occupation, and (2) must contain an imputation nec-
essarily hurtful in its effect on [her] business.' " *Lee*, 120 N.C. App. at
253, 461 S.E.2d at 777 (quoting *Tallent v. Blake*, 57 N.C. App. 249, 253,
291 S.E.2d 336, 339 (1982)).

Defendant contends that voicemail messages left by Mike Davis
and Scott Tucker, both independent distributors for Market America,
constituted slander *per se*. The trial court, however, was correct in

**MARKET AMERICA, INC. v. CHRISTMAN-ORTH**

granting summary judgment to Market America on defendant's claim as it related to these individuals, because the rule is well settled in North Carolina that an employer is not vicariously liable for the torts of an independent contractor. *Hartrick Erectors, Inc. v. Maxson-Betts, Inc.*, 98 N.C. App. 120, 389 S.E.2d 607 (1990). Moreover, regarding defendant's claim that Ridinger, Market America's President, left voicemail messages comparing her to members of the Heaven's Gate cult, defendant's evidence was fatally insufficient to establish a genuine issue of fact. The evidence consists of defendant's claim that at some point in time (she could not recall when), she listened to someone's voicemail (she could not recall whose) and heard Ridinger compare her to "the man from Mars what had all the people killed." She could not remember precisely what was said, and she had no witnesses or recordings to verify the existence of the message. Accordingly, we hold that the trial court committed no error in allowing summary judgment for Market America on defendant's slander claim.

**[3]** Defendant additionally assigns as error the trial court's grant of Market America's motion for summary judgment on defendant's claim for restraint of trade. Defendant contends that the non-competition clause contained in the Agreement violates section 75-1 of the General Statutes. We disagree.

Under section 75-1 of the North Carolina General Statutes, contracts in restraint of trade are illegal. N.C. Gen. Stat. § 75-1 (1994).

> However, our courts have recognized the rule that a covenant not to compete is enforceable in equity if it is: (1) in writing; (2) entered into at the time and as part of the contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory embraced in the restrictions; (5) fair to the parties; and (6) not against public policy.

*Starkings Court Reporting Services v. Collins*, 67 N.C. App. 540, 541, 313 S.E.2d 614, 615 (1984). The court must consider the time and territory restrictions in tandem when determining the reasonableness of a non-competition provision. *Hartman v. Odell and Assoc., Inc.*, 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994). Even if the covenant not to compete is permissible in all other respects, "the restraint is unreasonable and void if it is greater than is required for the protection of the promisee or if it imposes an undue hardship upon the person who is restricted." *Starkings*, 67 N.C. App. at 541, 313 S.E.2d at 615. Stated another way, a covenant not to compete " 'must be no

wider in scope than is necessary to protect the business of the employer.'" *Hartman,* 117 N.C. App. at 316, 450 S.E.2d at 919 (quoting *Manpower of Guilford County, Inc. v. Hedgecock,* 42 N.C. App. 515, 521, 257 S.E.2d 109, 114 (1979)). If the covenant restraining competition "is too broad to be a reasonable protection to the employer's business it will not be enforced." *Whitaker General Medical Corp. v. Daniel,* 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989).

Defendant challenges the validity of Market America's covenant not to compete on several grounds: First, defendant contends that the covenant is void and unenforceable under North Carolina law because it contains no territorial restriction. In support of this contention, defendant relies on our Supreme Court's opinion in *Professional Liability Consultants, Inc. v. Todd,* 345 N.C. 176, 478 S.E.2d 201 (1996) (per curiam) (adopting Judge Smith's dissenting opinion in 122 N.C. App. 212, 468 S.E.2d 578 (1996)), *reh'g denied,* 345 N.C. 355, 483 S.E.2d 175 (1997) and the Fourth Circuit's decision in *American Hotrod Assoc., Inc. v. Carrier,* 500 F.2d 1269 (4th Cir. 1974).

In *Todd,* 345 N.C. 176, 478 S.E.2d 201, the anti-competition covenant prohibited the defendant, a former sales representative of the plaintiff, from contacting the plaintiff's customers for a period of five years. Similarly, in *American Hotrod,* 500 F.2d 1269, the covenant not to compete restricted the defendants, members of a hot rod association, from becoming involved in the promotion, scheduling, or arrangements related to drag racing for a five-year period. Neither the *Todd* covenant nor the *American Hotrod* covenant contained any specified territorial restriction, and in both cases, the court determined that the covenants were unenforceable, because given the lack of territorial limits, the five-year provision of the agreements was excessive. *Todd,* 345 N.C. at 176, 478 S.E.2d at 202 and *American Hotrod,* 500 F.2d at 1279.

In the instant case, the non-competition covenant contains no fixed geographic restriction, but given that Market America is a national company, it is likely that the covenant is intended to reach the entire United States. The extensiveness of this territory notwithstanding, the covenant is operative for only six months following resignation or termination of the independent contractor relationship and forbids participation only in those companies "using a similar matrix marketing structure or handling similar products to that of Market America." Thus, the reasoning in *Todd* and *American Hotrod*

are inapplicable to the present set of facts, and we cannot say that Market America's covenant not to compete is unreasonable as a matter of law.

[4] Next, defendant argues that the covenant is void as to her because she was not an employee of Market America, but an independent distributor. However, this Court has held that non-competition clauses are applicable to independent contractor relationships. *See Starkings,* 67 N.C. App. 540, 313 S.E.2d 614 (finding that although otherwise permissible, covenant not to compete was unreasonable restraint of trade because it provided for greater restraint than reasonably required for protection of promisee); *see also Baker v. Hooper,* No. 03A01-9707-CV-00280, 1998 WL 608285 (Tenn. App. Aug. 6, 1998) (relying on *Starkings* decision, found that covenants not to compete apply to independent contractor relationships); *Renal Treatment Centers v. Braxton,* 945 S.W.2d 557 (Mo. App. E.D. 1997) (citing our decision in *Starkings,* concluded that non-compete clauses are valid against independent contractors).

[5] Defendant further contends that the covenant was factually inapplicable to her because at the time of the actions giving rise to this litigation, she had neither resigned nor been terminated from her distributorship with Market America. Relying on the language that reads, "I agree not to enter into competition with Market America . . . for a period of six months from my written resignation or termination as an Independent Distributor of Market America[,]" defendant takes the position that the covenant would become operative only after termination or resignation and, thus, did not apply while she was still a distributor. This construction of the Agreement is contrary to reason, as Market America certainly intended to prohibit competition by those still working as distributors for the company. In North Carolina, an agreement " 'encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion.' " *Strader v. Sunstates Corp.,* 129 N.C. App. 562, 569, 500 S.E.2d 752, 755-56, (quoting *Lane v. Scarborough,* 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973)) *disc review denied,* 349 N.C. 240, 514 S.E.2d 274 (1998). Inasmuch as the non-compete provision was impliedly operative while defendant remained a distributor with Market America, defendant's argument is without merit.

[6] Lastly, defendant argues that there can be no legitimate business purpose for restricting distributors from participating in a business

venture with a "similar matrix marketing system." Market America, however, asserts that this provision of the Agreement serves three basic goals:

> [F]irst, independent distributors of Market America simply cannot divide their efforts by working for more than one direct sales company. Second, by using a binary marketing structure itself, market America is vulnerable to distributors leaving and going to another binary company and removing not only themselves, but the critical parts of their sales organization as well. Third, many companies in the direct sales industry have regulatory problems and problems with legal compliance and Market America does not want to see its distributors and all or parts of their sales organizations going to companies that do not comply with the law.

Unquestionably, Market America's interest in protecting the integrity and viability of the business is legitimate, and as noted previously, the covenant expired six months from the date of termination or resignation. Thus, we hold that the non-competition clause was valid, and the court did not err in granting Market America's motion for summary judgment on defendant's claim for restraint of trade.

**[7]** With her next assignment of error, defendant asserts that the trial court improperly entered summary judgment for Market America on defendant's claim for unfair and deceptive trade practice. Again, we disagree.

Pursuant to section 75-1.1 of the North Carolina General Statutes, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1 (1994). "To prevail on a claim of unfair and deceptive trade practice a [claimant] must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the [claimant] or to his business." *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). " 'A [trade] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " *Opsahl v. Pinehurst, Inc.*, 81 N.C. App. 56, 69, 344 S.E.2d 68, 76 (1986) (quoting *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980)), *quoted in Bolton Corp. v. T.A. Loving Co.*, 94 N.C. App. 392, 411, 380 S.E.2d 796, 808 (1989). Additionally, " '[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to

an inequitable assertion of its power or position.' " *Opsahl*, 81 N.C App. at 69, 344 S.E.2d at 76 (quoting *Johnson*, 300 N.C. App at 264, 266 S.E.2d at 622), *quoted in Bolton*, 94 N.C. App. at 411-12, 380 S.E.2d at 808. The question of whether a particular practice is unfair or deceptive is a legal one, reserved for the court. *Wake Stone*, 111 N.C. App. at 282-83, 432 S.E.2d at 436.

Defendant contends that pursuant to our Supreme Court's holding in *Ellis*, 326 N.C. 219, 388 S.E.2d 127, libel *per se* directed toward a claimant in regards to the conduct of his business constitutes an unfair and deceptive trade practice in violation of section 75-1.1. Defendant, therefore, argues that because the 7 February 1997 bulletin was libelous *per se*, summary judgment for Market America on defendant's claim for unfair and deceptive trade practice was unwarranted.

In *Ellis*, the plaintiff, Ellis Brokerage Company, Inc., was a food broker whose function was "to convince large-quantity food buyers, such as hospitals and school systems, to place orders with the company's clients who [were] in the business of selling foods." *Id.* at 221, 388 S.E.2d at 128. The defendant, Northern Star Company, was one of the plaintiff's clients. After the defendant terminated its brokerage contract with the plaintiff, the defendant's president sent the following letter to several buyers who had received an earlier price list from the plaintiff:

Dear Sir:

We have recently received copies of a price list sent to you from Ellis Brokerage Company regarding pricing on Northern Star potato products. These prices were noted for *bids only*, delivered by Northern Star.

We at Northern Star Company did not authorize such a price list and therefore cannot honor the prices as quoted[.]

*Id.* at 222, 388 S.E.2d at 129. The plaintiff instituted an action against the defendant alleging that the letter was libelous *per se* and constituted an unfair and deceptive trade practice affecting commerce under section 75-1.1. At the close of the plaintiff's evidence, the trial court granted the defendant's motions for directed verdicts on all claims but libel. The libel claim was submitted to the jury, which found that the defendant had maliciously libeled the plaintiff and awarded compensatory and punitive damages.

On appeal, the defendant argued that the "letter [was] not defamatory at all or, alternatively, it [was] susceptible of both defamatory and nondefamatory interpretations." *Id.* at 224, 388 S.E.2d at 130. The Court held that the letter was libelous *per se*, because under any reasonable interpretation, it impeached the plaintiff in its trade as a food broker. The Court further held that "a libel *per se* of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75-1.1, which will justify an award of damages under N.C.G.S. § 75-16 for injuries proximately caused." *Id.* at 226, 388 S.E.2d at 131. "To recover, however, a plaintiff must have 'suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.' " *Id.* (quoting *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986)).

The holding in *Ellis* has no bearing on the present set of facts. Unlike the 7 February 1997 bulletin in the case *sub judice*, the defamatory letter was not determined to be protected by a qualified privilege. In fact, the defendant in *Ellis* did not even assert that such a privilege existed; instead, the defendant argued that the communication was not libelous. Furthermore, the record in the instant case contains no evidence to show that defendant " 'suffered actual injury as a proximate result of [the Follow-Up Bulletin].' " *Id.* Accordingly, we hold that defendant's reliance on *Ellis* is unfounded.

[8] Defendant also argues that Market America inequitably asserted its power and position by seeking to enforce a non-competition clause which defendant contends was legally void. Given our determination that the non-competition clause was valid and enforceable, we reject defendant's contention as unpersuasive. Furthermore, because defendant has presented no facts to show any "immoral, unethical, oppressive, unscrupulous, or substantially injurious" conduct on the part of Market America, we hold that defendant failed to establish a triable issue of fact as to her claim for unfair or deceptive trade practice. *See Bolton*, 94 N.C. App. at 411, 380 S.E.2d at 808. This assignment of error, then, fails.

[9] By her next assignment of error, defendant argues that the trial court erroneously awarded summary judgment to Market America with respect to defendant's claim for tortious interference with business relations. Again, we cannot agree.

" 'As a general proposition any interference with free exercise of another's trade or occupation, or means of livelihood, by preventing

people by force, threats, or intimidation from trading with, working for, or continuing [her] in their employment is unlawful.' " *Coleman v. Whisnant*, 225 N.C. 494, 506, 35 S.E.2d 647, 656 (1945) (quoting *Kirby v. Reynolds*, 212 N.C. 271, 281, 193 S.E. 412, 418 (1937)), *quoted in Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (1982). Typically, "a [defending party's] motive or purpose is the determining factor as to liability in actions for interference with economic relations, 'and sometimes it is said that bad motive is the gist of the action.' " *Id.* at 439, 293 S.E.2d at 916 (quoting Prosser § 129, pp. 927-28). Therefore, "to maintain an action for interference with business relations in North Carolina, [the complainant] must show that [the defending party] 'acted with malice and for a reason not reasonably related to the protection of a legitimate business interest of [the defending party].' " *Id.* (quoting *Smith v. Ford Motor Co.*, 289 N.C. 71, 94, 221 S.E.2d 282, 296 (1976)).

Defendant contends that the threatening and intimidating tone of the 7 February 1997 bulletin prevented unnamed individuals from transacting business with her. Defendant asserts that as a result of the publication, her Market America business and her husband's CAT enterprise suffered. Throughout this litigation, however, defendant has maintained that she herself was not an independent distributor for CAT and that her only involvement with the organization was as an assistant to her husband. Thus, she had no CAT business with which Market America could interfere, and her claim in that regard fails. As to her Market America business, defendant has not shown how the 7 February 1997 publication interfered with any such economic relations. Furthermore, our prior conclusion that defendant failed to show any actual malice on the part of Market America in distributing the bulletin necessarily causes defendant's claim to fail. The trial court correctly granted summary judgment to Market America on her claim for wrongful interference with business practice.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

Judges JOHN and HUNTER concur.